## State of Vermont v. Barbe Ann Phillips

[436 A.2d 746]

No. 5-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

*Philip H. White,* Orleans County State's Attorney and Washington County Deputy State's Attorney, Newport, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Danforth Cardozo, III,* Montpelier, for Defendant.

**Larrow, J.** The defendant was charged and convicted of aiding in the concealment of stolen property in violation of 13 V.S.A. § 2561. The appeal from this conviction presents one central issue, whether the district court erred in refusing to suppress a confession and certain physical evidence as products of an unlawful search and seizure. The nature of the issues involved requires an extended factual recitation.

On March 28, 1979, the defendant and a companion were observed in the record department of a store in Berlin, Vermont. One of the security officers at the store believed the women were acting suspiciously, so accompanied by his supervisor he continued his observations. The defendant's companion, who was wearing a heavy coat on a warm day, repeatedly turned her back to the security officers after picking up some records. She would then walk down the aisle and return to the record bin without any records. After forty-five minutes the two women left the store and went to the defendant's car. They were there observed leaning over to the back seat of the car. They appeared to be taking things from underneath the coat and placing them in the back seat, then covering them with a white material. The defendant and her companion then went to another store in the shopping center. While they were in that store, the security officer walked over to the defendant's car and observed the white material apparently covering something in the rear seat. One of the security officers went to a phone in a nearby store and called the state police. He identified himself to the dispatcher as a security officer, gave his name, and informed her that two girls had "just put a

bunch of stuff in their car" and were leaving. The dispatcher radioed a state trooper in the area, informing him of a suspected shoplifting and that the suspects were about to leave. The trooper immediately went to the store. As he pulled to a "rolling stop" the security officer told him that the suspects were two women in a blue station wagon headed towards Montpelier and that the car had a Vermont temporary license plate with a specified number. The trooper immediately proceeded towards Montpelier. En route he radioed the barracks a description of the car and its plate number. This information was transmitted to the Montpelier Police Department, which dispatched one of its officers. The Montpelier policeman shortly thereafter saw the vehicle. He followed it with his blue light on until it pulled into a diagonal parking space. The Montpelier officer parked his cruiser behind the defendant's car, effectively blocking any attempt to leave. He approached the car and asked the occupants for identification and registration. They produced their driver's licenses. The officer then informed them that another "agency" wished to speak with them. After several minutes the state trooper arrived on the scene. The Montpelier officer gave the trooper the licenses he had obtained from the women, and left.

In the interim another state trooper had arrived at the store in Berlin. The security officers informed this trooper of the women's actions in the store and later in the car and that they suspected records had been stolen. The trooper then gave them forms for their statement and left for Montpelier.

The first trooper in Montpelier, after having obtained the licenses, asked the defendant to join him in his cruiser while he "ran a check" on her. The record check revealed an outstanding warrant. He then placed her under arrest for the outstanding warrant. After the formal arrest he had a conversation by radio with the second state trooper who was still at the store. The second trooper related a description of the vehicle, the suspects, and that the security officers believed some records had been stolen. The specific acts which led to the security officer's suspicion were not relayed.

The trooper in Montpelier informed the defendant of her Miranda and public defender rights, following which she signed a receipt and waiver of these rights. He then questioned the defendant about the incident at the store. The defendant

denied any knowledge or involvement. The trooper then asked the defendant if she would consent to a search of the front and rear areas of her automobile. The defendant consented to the search. The search disclosed several open garbage bags of records and other merchandise. The defendant and her companion were then transported to the State Police barracks. At the barracks both suspects signed confessions admitting involvement in the crime of shoplifting.

The defendant contends that the facts show the functional equivalent of an arrest, requiring full probable cause, not just an investigatory stop requiring no more than a reasonable suspicion.

■■ The stopping of an automobile and the detention of its occupants constitutes a seizure within the meaning of the Fourth and Fourteenth Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. *Delaware* v. *Prouse,* 440 U.S. 648, 653 (1979). While the Fourth Amendment allows a properly limited seizure in appropriate circumstances, on facts that do not constitute probable cause to arrest or to search for evidence of a crime, see *Adams* v. *Williams,* 407 U.S. 143 (1972), and *Terry* v. *Ohio,* 392 U.S. 1 (1968), these are exceptions to the general rule requiring probable cause to make a Fourth Amendment seizure. *Dunaway* v. *New York,* 442 U.S. 200, 210 (1979). These exceptions have retained a narrow scope. *Id.*

The defendant does not argue that a brief investigatory stop based on a reasonable suspicion of illegal activity was unwarranted. Instead she argues that the officers went beyond the rather limited nature of an investigatory stop, transforming the transaction into a seizure for purposes of arrest which requires full probable cause.

The seizure involved here does indeed bear some of the traditional trappings of an arrest. Prior to her formal arrest the defendant was prevented from leaving the scene; her license, furnished on request, was not returned to her; and she was requested to sit in the state police cruiser.

■ While the police are permitted, on reasonable suspicion, to make an investigatory stop for a few minutes during which they may ask a brief question or two, any further detention must be based on consent or probable cause. See

*id.* at 210–13; *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 880 (1975); *United States* v. *Hill,* 626 F.2d 429 (5th Cir. 1980); *United States* v. *Chamberlin,* 609 F.2d 1318 (9th Cir. 1979).

Arguably, the police actions in this case extend beyond the proper scope of an investigatory stop. We need not, and do not, determine this point because of our holding, *infra,* that probable cause, not present when the initial detention was made, (1) did exist when the eventual search was conducted, (2) was supplied by sources totally independent of the defendant and her initial detention, even if illegal, and (3) because the conducted search, after the fully justified arrest on the outstanding warrant, was in any event authorized under the recent holding in *New York* v. *Belton,* 101 S.Ct. 2860 (1981).

Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *Henry* v. *United States,* 361 U.S. 98, 102 (1959). Assuming some minimal communications between the officers, it is the collective knowledge of the police at the time of the arrest and not the knowledge of the individual arresting officer which is measured. *Whiteley* v. *Warden,* 401 U.S. 560, 568 (1971); *State* v. *Unwin,* 139 Vt. 186, 424 A.2d 251 (1980). The communication here, even if sufficient to justify the application of this rule, occurred after the initial detention. It therefore cannot be considered in evaluating whether probable cause existed at the moment of that detention. Similarly the ultimate discovery of the evidence sought to be excluded cannot be considered, because an arrest or search cannot be justified by what the search discloses. *Whiteley, supra,* 401 U.S. at 567; *Henry, supra,* 361 U.S. at 103.

A review of the information possessed by the police at the time of initial detention leads us to conclude that probable cause for arrest did not then exist. The standards for evaluating the factual basis supporting a probable cause assessment are not less stringent in a warrantless arrest situation than in a case where a warrant is sought from a judicial officer. *Whiteley, supra,* 401 U.S. at 566; *Wong Sun* v. *United States,* 371 U.S. 471, 479 (1963). Mere conclusions that the

defendant was engaged in criminal activity are insufficient to justify an arrest. *Whiteley, supra,* 401 U.S. at 565. For probable cause to exist in a warrantless arrest situation, it is necessary that some facts substantiating the commission of an alleged crime be communicated to the arresting officer or to an officer with whom he is in communication. Cf. *Spinelli* v. *United States,* 393 U.S. 410, 416 (1969) (involving information necessary to obtain a warrant).

Even assuming arguendo that the police were permitted to infer that a shoplifting had occurred from a statement that two women were "putting a bunch of stuff in their car" and were preparing to leave, there was still no indication as to what the source or basis of the security officer's information was. Subsequent revelations will not retroactively confer probable cause to make an arrest.

The second possible justification for the defendant's continued presence at the scene is consent. Consent to remaining at the scene is plainly not present. The officer retained the defendant's license, and she was seated in the police cruiser. She was effectively prevented from leaving.

Having determined that the initial detention, if an arrest, was invalid, we now must consider whether the subsequent search was unlawful. The State seeks to justify the search on two bases, probable cause and consent.

Before the search the second trooper arrived at the scene, after having heard the security officer's complete story. The additional information clearly rose to the level of probable cause. The defendant's argument that only suspicions of illegal activity were conveyed to the trooper is unconvincing. The narrated actions of the defendant and her companion created more than a mere suspicion of illegal activity. To hold that probable cause did not exist here is tantamount to saying that the occurrence of a criminal act must not only be probable, but proven beyond a reasonable doubt before a warrantless arrest can be valid. This is not the law. See *United States* v. *Morris,* 477 F.2d 657 (5th Cir. 1973); *United States ex rel. Mealey* v. *Delaware,* 352 F. Supp. 349, 353 (D. Del. 1972); *State* v. *James,* 286 N.W.2d 534, 536 (S.D. 1979). Given the circumstances the officers also had probable cause to search

the vehicle for evidence of the crime. See *Chambers* v. *Maroney*, 399 U.S. 42, 47–48 (1970).

With probable cause existing at the time the search was actually made, we must determine whether such probable cause, arising from an independent source after a period of arguably illegal detention, can justify the subsequent search. The arrest, of course, became incontestably legal when formally made on the basis of the discovered outstanding warrant against the defendant.

In *Wong Sun, supra,* the Supreme Court recognized the now fundamental principle that the connection between an illegal arrest and the discovery of challenged evidence may become sufficiently "attenuated" to make the evidence admissible when it results from investigation which can be considered as independent of the illegality. It held that the question in such a case was "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488.

When made, the search in this case was based on then existing probable cause. It was not a search incident to the detention characterized as illegal, nor was the probable cause in any sense a "fruit" of such claimed illegality. It arose independently, simply from the additional information supplied by the security officers and relayed to the scene. The only nexus between the first detention and the later search was defendant's detention at the scene. To hold this a sufficient basis for invalidating the search would be tantamount to adopting the "but for" rule rejected by the Supreme Court in *Wong Sun, supra.* The remote connection between the alleged illegal detention and the search later conducted was more than sufficiently attenuated to dissipate any claimed taint. See *United States* v. *Kennedy,* 457 F.2d 63, 66 (10th Cir. 1972).

This case, therefore, is clearly distinguishable from those (1) in which evidence is obtained as the direct result of an illegal arrest, see *Wong Sun, supra,* (2) where probable cause for a second arrest, or for a search, is discovered from the defendant himself (as through words or

conduct directly resulting from illegal arrest), or (3) where search is incident to illegal arrest. When this search was actually made, it was made with probable cause, based on information received totally independently of the defendant or her detention. And similar independence of the claimed illegality characterized the defendant's confession, "fruit" of the untainted investigation and search rather than of any illegality in the first detention. The product of the search, and the confession itself, were properly admitted by the trial court. See *Whiteley, supra.* And, especially in point, see *State* v. *Barry,* 86 N.J. 80, 429 A.2d 581 (1981), holding that intervening independent circumstances may purge the taint of an illegal arrest from a confession, and that exclusion from evidence is required only when there is a causal connection with the arrest.

In sum, we hold that, if there was illegality in defendant's initial detention, the subsequent automobile search fully authorized under *Belton, supra,* its products, and defendant's confession were not come at by exploitation of such illegality, but by means sufficiently distinguishable to be purged of any primary taint. *Wong Sun, supra.*

*Affirmed.*