## State of Vermont v. Raymond A. Jewett

[532 A.2d 958]

No. 83-478

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Present for June 26, 1987 Reargument Ruling: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.), and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed August 14, 1986

Motions for Reargument Denied June 26, 1987; August 10, 1987

326

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, and *John R. Churchill*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Gregory W. McNaughton*, Barre, for Defendant-Appellant.

*David W. Curtis*, Defender General, and *David Carpenter*, Appellate Defender, Montpelier, for amicus curiae Office of Defender General.

**Allen, C.J.** Defendant appeals his conviction for driving while under the influence of intoxicating liquor (DUI) in violation of 23 V.S.A. § 1201(a)(2). We affirm.

While driving northbound on Interstate 89, Corporal Dorfner (corporal) spotted defendant tailgating another vehicle in excess of the posted speed limit. Upon observing further reckless and erratic operation, the corporal attempted to stop the two vehicles. Defendant pulled his car over into the breakdown lane. The other vehicle pulled over a half mile further down the road. The corporal drove past defendant's vehicle and stopped near the other car. Defendant then drove off.

Shortly thereafter, another Vermont State Police officer, Trooper Markiewicz (trooper), arrived at the scene. The corporal informed the trooper of the make and registration of defendant's vehicle, and told him that the operator had been driving errati-

cally and could be under the influence. The trooper caught up with defendant's car, and signalled him to stop. Defendant pulled his car off the highway, across the shoulder, and part way down a grassy embankment at an angle of 30 degrees to the highway before coming to a stop.

The trooper approached the car, observed that defendant's eyes were bloodshot, and ordered him to get out of the car. When defendant got out, the officer observed that he was unsteady on his feet. Feeling threatened by defendant's size, the trooper escorted defendant to the front of the cruiser to conduct a brief pat-down search for weapons. The trooper then asked defendant to perform certain dexterity tests, and upon determining that there was probable cause to suspect a DUI violation, took him to the Colchester police barracks for DUI processing.

Before trial, defendant moved to suppress all evidence obtained after the pat-down search. He argued that the pat-down search violated the Fourth and Fourteenth Amendments to the United States Constitution as well as Chapter I, Article Eleven of the Vermont Constitution, and that the violation converted the encounter into an illegal arrest requiring suppression of any evidence gained after the encounter. The court denied the motion, concluding that, even if the pat-down search was improper, the evidence sought to be suppressed was not derived from that improper encounter.

## I.

On appeal, defendant renews the arguments he made to the trial court. He concedes that the police had the authority to make a "brief investigatory stop based on a reasonable suspicion of illegal activity." See State v. Phillips, 140 Vt. 210, 215, 436 A.2d 746, 749 (1981). He also appears to concede that a limited search for weapons may be conducted in the absence of probable cause where law enforcement officers have reasonable grounds to believe that criminal activity is afoot and that the suspect is armed and dangerous. See Terry v. Ohio, 392 U.S. 1, 27 (1968). He contends, however, that the officer here had no such grounds and that the illegal pat-down search converted the encounter into an arrest requiring probable cause. He asserts that any evidence gained subsequent to this event was thus gained as a result of an illegal arrest and must be suppressed as a necessary sanction against

unwarranted police conduct to vindicate the individual's state constitutional right to be free from search and seizure. We disagree.

■ First, we conclude that, although Chapter I, Article Eleven of the Vermont Constitution* does not contain the word "unreasonable," it does not contemplate an absolute prohibition on warrantless searches or seizures. See *State v. Badger*, 141 Vt. 430, 454-55, 450 A.2d 336, 350 (1982) (upholding warrantless seizure of "manifestly incriminating, yet vulnerable, evidence which was openly displayed, with no attempt at concealment" where such seizure was the least restrictive action available to police). The circumstances under which warrantless searches or seizures are permitted, however, must be " 'jealously and carefully drawn.' " See *State v. Meunier*, 137 Vt. 586, 588, 409 A.2d 583, 584 (1979) (quoting *United States v. Watson*, 423 U.S. 411, 427 (1976) (Powell, J., concurring)).

■ An officer's authority to arrest without a warrant is measured against the guidelines set forth in V.R.Cr.P. 3(a). A limited search for weapons, however, such as the one at issue in this case, is a wholly different kind of intrusion from an arrest.

> An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows. The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person. It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.

See *Terry*, 392 U.S. at 26 (footnote omitted). In short, a limited search for weapons, whether it be legally or illegally conducted, does not convert an investigative stop into a full-blown arrest.

---

* Chapter I, Article 11 provides in pertinent part:
    That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure . . . .

The legality of the police conduct does not change our analysis because the degree of intrusion remains the same regardless of the circumstances that prompted the frisk.

■ Persons who claim to have been subjected to an illegal *Terry*-type frisk are not without a remedy under the Vermont Constitution. They may file a motion to suppress any evidence discovered as a result of such a search. See *Badger*, 141 Vt. at 452-53, 450 A.2d at 349 ("Evidence obtained in violation of the Vermont Constitution, or as the result of a violation, cannot be admitted at trial as a matter of state law."). They must establish, however, a causal nexus between the constitutional violation and the evidence sought to be suppressed in order to prevail. See *Phillips*, 140 Vt. at 218, 436 A.2d at 751 (citing *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963)). The test we now adopt is a familiar one: " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun*, 371 U.S. at 488 (citing J. Maguire, Evidence of Guilt 221 (1959)).

■ In this case, defendant failed to establish a causal nexus between the asserted impropriety—the pat-down search for weapons—and the evidence he seeks to have suppressed. The incriminating evidence, namely, the odor of alcohol, defendant's physical appearance, and his coordinative capability, were all readily observable by the arresting officer and discovered in the normal course of investigating a DUI violation. In the absence of such a causal nexus, we have no occasion to pass on the legality of the frisk at issue here.

The Office of the Defender General, appearing as amicus curiae, contends that a violation of defendant's state constitutional rights occurred when the officer ordered defendant to get out of his vehicle, and that any evidence obtained subsequent to that point in time must be suppressed. In essence, amicus asks us to hold that under Chapter I, Article Eleven of the Vermont Constitution police officers may conduct a limited search for weapons or require the suspect to leave his vehicle only if they reasonably suspect the person is armed and dangerous. Compare *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding "that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without

violating the Fourth Amendment's proscription of unreasonable searches and seizures."). According to amicus, the police had no authority to order defendant to get out of his vehicle as they had no reason to believe that he was armed and dangerous.

■ An investigatory stop of a vehicle and the detention of its passengers is a "seizure." *Delaware* v. *Prouse*, 440 U.S. 648, 653 (1979); *Phillips*, 140 Vt. at 215, 436 A.2d at 749. In this case, the initial stop was based on suspicion of illegal activity rather than upon probable cause to arrest. See *Phillips*, 140 Vt. at 215, 436 A.2d at 749; see also *Berkemer* v. *McCarty*, 468 U.S. 420, 439 (1984) (usual traffic stop of an automobile "more analogous to a so-called '*Terry* stop,' see *Terry* v. *Ohio*, 392 U.S. 1 (1968), than to a formal arrest."). The validity of the stop, however, has been conceded.

An order to get out of one's automobile is a further "seizure" within the meaning of Article Eleven. See *State* v. *Wyatt*, 67 Haw. 293, 304, 687 P.2d 544, 552 (1984). It is not, however, completely outside the realm of legitimate law enforcement conduct where the suspected criminal activity is DUI.

The arresting officer in this case had been informed by Corporal Dorfner that defendant had been driving in a highly erratic manner and could be under the influence. When the trooper signalled defendant to pull over, defendant stopped his car at an oblique angle to the highway, heading downhill on the grassy margin past the breakdown lane. This further evidence of erratic operation gave the trooper reasonable grounds to suspect that defendant was DUI. At that point, the trooper could lawfully order the defendant to get out of his car in order to confirm or negate his suspicions regarding probable cause to arrest.

■ In sum, we hold that when an officer's observations lead him reasonably to suspect that an individual is driving under the influence he may stop the vehicle and investigate the circumstances that provoke suspicion. Although the stop and inquiry must be reasonably related in scope to the justification for their initiation, see *Terry*, 392 U.S. at 29, we find no violation on the record here.

## II.

Defendant next claims that the court erred in permitting the prosecution to amend its pleading just before the trial was sched-

uled to begin. Upon reviewing the pleadings, the trial judge noticed that, while the State's information charged the defendant with DUI, the supporting affidavit only alleged facts sufficient to charge the defendant with careless and negligent driving. During an in-chambers conference, the trial judge brought this matter to the parties' attention and permitted the State to file additional affidavits.

Defendant's pretrial motions and his actions during the pretrial hearings reveal that he was aware that he was charged with DUI. Defendant thus had knowledge of the offense charged, and an adequate opportunity to prepare for trial. Consequently, there was no error in allowing the pleadings to be amended before trial. See Reporter's Notes, V.R.Cr.P. 7 (rule contemplates that prosecutor may amend an information or indictment at any time prior to trial without leave of court provided defendant receives fair notice of the charge).

## III.

Defendant also contends that the State failed to prove that he was travelling on a highway, a material element of the offense charged. 23 V.S.A. § 1201. As defined in 23 V.S.A. § 4(13), a highway:

> shall include all parts of any bridge, culvert, roadway, street, square, fairground or other place open temporarily or permanently to public or general circulation of vehicles . . . .

Although the State failed to elicit testimony that the highway in question was in fact open to the public on the date in question, such failure does not require reversal. When viewed in the light most favorable to the State, *State v. Gilman*, 145 Vt. 84, 86, 483 A.2d 598, 599 (1984), there was evidence that the road on which defendant was travelling was an interstate highway, and that a number of other vehicles were travelling on the same roadway at the time of the offense. This was sufficient to allow the jury to conclude that the road was a highway within the meaning of 23 V.S.A. §§ 4(13) and 1201.

## IV.

Finally, defendant claims that the court erred in permitting a witness, who never physically observed the defendant, to testify that, in his opinion, defendant was intoxicated.

The witness in question was the driver of the other vehicle that was stopped by the police. He stated that the individual operating defendant's vehicle was driving erratically and appeared to be drunk. He based this not on any physical observation of the defendant himself, but rather on his observation of defendant's driving.

Under Vermont law, "a lay person, on the basis of his personal observations, is competent to give his opinion as to the sobriety of an individual . . . ." *State* v. *Rifkin*, 140 Vt. 472, 476, 438 A.2d 1122, 1124 (1981). Under V.R.E. 701, a lay person's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

In the instant case, the witness's statement that "it appeared the individual [operating the defendant's vehicle] was drunk" was based on facts which the witness personally observed: the erratic and dangerous operation of the defendant's vehicle. The fact that other reasons may have caused such behavior does not render the witness's testimony inadmissible. We therefore find no abuse of the trial court's discretion in failing to strike the testimony of the witness concerning defendant's sobriety.

*Affirmed.*

## On Motion For Reargument

**Per Curiam.** By motion for reargument the parties have brought to our attention the discussion of an issue in the original opinion which was unnecessary to the disposition of the cause. Accordingly, we have recalled the opinion and deleted reference to this issue. We have also made a revision to the statement of the facts of the case to correct an inaccuracy pointed out by one of the parties.

The revisions made do not affect the result and the entry order is not affected.

*Motion for reargument denied.*