## State of Vermont v. Mark K. Sherwood

[800 A.2d 463]

No. 00-500

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed April 19, 2002

Motion for Reargument and Petition for Extraordinary
and Injunctive Relief Denied May 21, 2002

28

*John T. Quinn,* Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Robert Appel,* Defender General, *William A. Nelson,* Appellate Attorney, and *Lori Lustberg* (On the Brief), Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** In this appeal from defendant's conditional nolo contendere plea for driving under the influence of intoxicating liquor ("DUI") we are asked to decide whether the State's videotaping of defendant's telephone conversation with his attorney violates the statutory right to counsel under 23 V.S.A. § 1202(c) warranting dismissal of the charges or suppression of defendant's refusal to submit to a breath test. Because we agree with the district court's determination that defendant failed to demonstrate that the videotaping affected his consultation with his attorney, or that the

State made any use of the recording or information contained therein to defendant's prejudice, we affirm.

The undisputed facts establish that a state trooper observed defendant's vehicle speeding on Route 7 in Salisbury, Vermont in the late evening of March 14, 2000. The trooper pursued defendant with his siren on and blue lights flashing. After about a mile, defendant stopped his car, and his passenger jumped out and fled. The trooper drew his weapon and ordered defendant to remain in the car fearing he might also attempt to flee. During his initial conversation with defendant, the trooper noted signs of intoxication. The trooper thereafter administered roadside dexterity tests and a preliminary breath test, which led the trooper to take defendant into custody to process him for DUI at the state police barracks.

While the trooper went through the standard DUI processing procedure at the barracks, defendant was handcuffed, although he was cooperative. Defendant's handcuffs were removed while he spoke to his attorney by telephone, and he was allowed to walk around the processing room during the conversation. The trooper moved about on the other side of the one open door to the processing room, but did not monitor or overhear any of defendant's conversation. The second door to the processing room remained closed. Another trooper was also in the building at the time and passed by the open door; but like her colleague, she did not show any interest in defendant's telephone conversation. After consulting with counsel, defendant refused to provide an evidentiary sample of his breath.

Defendant's entire conversation with his attorney, like the entire processing, was videotaped. The system also captured the sound, but defendant was unaware of that fact at the time. The taping comported with the trooper's standard practice of recording the whole processing event to eliminate any possibility that a defendant could claim the State tampered with the tape. Taping was also generally done for security reasons. In addition to the tape, the processing was televised on a monitor in the sergeant's office, but no voices could be heard over the monitor because the sound had been turned down. No one in the barracks that evening watched the monitor during defendant's conversation with his lawyer, however.

After defendant learned of the existence of the videotape, which included a recording of the conversation he had with his lawyer, he moved to dismiss the charges against him on the grounds that the secret taping violated his right to a private consultation with a lawyer

under 23 V.S.A. § 1202(c).* In the alternative, defendant requested that the court suppress his refusal to supply a breath sample. The court denied both requests. It found that although the State did not have a legitimate security concern, defendant failed to show he was prejudiced by the trooper's surreptitious taping. The court found, based on defendant's testimony, that defendant thought his consultation with counsel was meaningful and that he was not inhibited during the conversation. The court also found that defendant did not show that either the police or the prosecution made any use of the recorded conversation to defendant's detriment. The court noted its disapproval of the practice, but concluded that neither dismissal nor suppression was justified under established precedent in the absence of some showing of prejudice. Consequently, defendant entered a conditional plea of nolo contendere and appealed the issue to this Court.

█We have had several occasions to define the scope of a person's right to counsel under 23 V.S.A. § 1202(c), including the standard by which to evaluate whether the State has violated that right. The statute mandates that a law enforcement officer permit a person from whom the officer has requested a breath sample an opportunity to consult with a lawyer prior to deciding whether to provide the sample. 23 V.S.A. § 1202(c); *State v. Lombard*, 146 Vt. 411, 415, 505 A.2d 1182, 1184 (1985). As we have previously observed, the statutory right to counsel addresses the legislature's concern "that any refusal to be tested not be lightly decided." *State v. Carmody*, 140 Vt. 631, 636, 442 A.2d 1292, 1295 (1982). Thus, the opportunity for legal consultation must be both meaningful and reasonably private. *State v. West*, 151 Vt. 140, 144, 557 A.2d 873, 876 (1988). Absolute privacy is not required so that the police may address any security concerns arising from the

---

* The State's response to defendant's motions set forth in some detail the contents of defendant's disclosures to his attorney. The State asserts that it became necessary to disclose that information because defendant raised the issue in his motions. Our evidentiary and ethical rules reflect the importance of confidential attorney-client communications to the fair administration of justice, however. See V.R.E. 502(b) (confidential attorney-client communications inadmissible absent client consent); Vt. R. Prof'l. Conduct 1.6(a) (a lawyer shall not reveal information related to representation of client without client's consent). Rather than disclose in public court filings the contents of confidential attorney-client communications obtained without proper authorization, as the prosecutor did in this case, the prosecutor should have requested the court to review the videotape in camera, or asked to submit the information under seal. Such a procedure would have protected defendant's confidences while also allowing the prosecution to advance its arguments opposing defendant's motions.

interaction with the defendant. *Id.* We must balance the defendant's right to a private consultation with an attorney with the public's need to preserve important evidence. *Id.* Therefore, we have held that a defendant's statutory right to counsel is violated where the police unjustifiably monitor a defendant's legal consultation and the monitoring inhibits, coerces, or otherwise restricts the defendant's ability to meaningfully engage with his attorney. *Id.* at 144, 557 A.2d at 876-77; see also *Brow v. Dist. Court of Vt.*, 153 Vt. 488, 490, 572 A.2d 1347, 1348 (1990) (absent some evidence that defendant was inhibited, restricted, or coerced by an officer's presence during defendant's conversation with counsel, the mandate of the statutory right to counsel may be fulfilled).

When analyzing a claim that the State violated the statutory right to a lawyer by monitoring a defendant's communication with counsel, we use an objective test and consider whether the State afforded the defendant an opportunity to consult with his attorney in private. *West*, 151 Vt. at 145, 557 A.2d at 876. We apply that standard in light of the totality of the circumstances to account for the State's legitimate security concerns, if any such concerns exist. *Id.* at 144, 557 A.2d at 876.

Applying the objective standard to the facts of this case, we conclude that the State violated defendant's right to a private consultation with his lawyer by taping the conversation. The tape itself is evidence that defendant's conversation with counsel was not, in fact, private. As the trial court found, the State did not have a legitimate security concern regarding defendant. Thus, there was no justification for taping defendant's legal consultation. Under the totality of the circumstances, therefore, defendant was not provided his statutory right to a private legal consultation prior to his decision to take or forego the breath test.

Our inquiry does not end here, however. Defendant's right to consult counsel must also be meaningful, *West*, 151 Vt. at 144, 557 A.2d at 876, and the district court in this case determined that it was. It also found that defendant did not feel inhibited in his conversation, presumably because he was unaware it was being recorded, and that the State did not use the conversation against defendant. Defendant does not contest these findings, which demonstrate that the State's violation did not result in prejudice to him. Nevertheless, defendant urges us to adopt a standard which makes dismissal of the charges automatic in cases like this to deter law enforcement from deceptively taping confidential communications between DUI suspects and their

lawyers. He argues that he should not have to demonstrate that the State's misconduct prejudiced him. We decline to adopt such a standard.

■We first note that dismissal is an extraordinary remedy that impinges on society's interest in the effective administration of criminal justice. See *United States v. Morrison*, 449 U.S. 361, 364 (1981) (remedy for constitutional violations must not unnecessarily infringe other competing interests like society's interest in administering criminal justice); *State v. Baker*, 474 P.2d 254, 258 (Wash. 1970) (dismissal of criminal charges is an extraordinary remedy available only when the accused's rights have been prejudiced). Consequently, prejudice is an essential element to warrant dismissal of charges in appropriate circumstances. *Baker*, 474 P.2d at 258. Notably, even where the government's violation of a defendant's right to counsel under the Sixth Amendment to the United States Constitution "may have been deliberate," the United States Supreme Court requires a defendant to show prejudice to justify dismissal of criminal charges. *Morrison*, 449 U.S. at 365. We therefore see no reason to modify the prejudice requirement, and observe that our conclusion is consistent with the law in other jurisdictions. See, e.g., *Kiehl v. State*, 901 P.2d 445, 447 (Alaska 1995) (police tape of defendant's conversation with counsel, although improper, did nothing to impair defendant's consultation and therefore did not affect defendant's decision to take breath test); *People v. Pobliner*, 298 N.E.2d 637, 642 (N.Y. 1973) (dismissal of charges not sufficiently justified by mere showing that defendant's conversations with counsel were intercepted; defendant must show the interception undermined his right to counsel and could not be remedied by holding a new trial). The remedy of dismissal is simply not warranted in the absence of prejudice to the defendant's substantial rights.

Moreover, we find it instructive that dismissal is not the remedy we employ when redressing unconstitutional searches and seizures and violations of a defendant's constitutional privilege against self-incrimination. In those cases, we prohibit the State from using any illegally obtained evidence against the defendant at trial in part to deter unlawful police conduct. See *State v. Badger*, 141 Vt. 430, 452-53, 450 A.2d 336, 349 (1982). The suppression remedy thus appropriately accounts for society's interest in seeing criminals brought to justice by allowing the prosecution to go forward, but without using evidence gathered through illegal means.

■Suppression of his refusal to submit to a breath test is the alternative remedy defendant seeks in this appeal. Suppression is neither appropriate nor required in this case. Some causal nexus must exist between the alleged illegality and the evidence a defendant seeks to keep from the jury. *State v. Jewett*, 148 Vt. 324, 329, 532 A.2d 958, 960 (1986). Defendant's refusal to provide an evidentiary sample of his breath can in no way be construed as the product of the surreptitious videotaping of which he was completely unaware at the time he decided to refuse to submit to the test. Cf. *Kiehl*, 901 P.2d at 447 (because the surreptitious recording did not impair defendant's consultation with counsel, the police misconduct did not affect the ensuing breath test and thus was not a product of the police impropriety); see also *State v. Phillips*, 140 Vt. 210, 218, 436 A.2d 746, 751 (1981) (illegality of defendant's initial detention does not warrant suppression of evidence gathered during search after probable cause had been established because evidence was not product of initial illegality).

Defendant finally claims that the videotaping violated his rights under the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution. We do not address those claims because defendant failed to raise them before the district court in the first instance and thereby waived them on appeal. See *State v. Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) (to preserve issue for appeal, party must first raise issue with trial court).

■In denying defendant the relief he sought, the district court cautioned against the practice of recording attorney-client conversations even where, as here, the court found no intent by the police to determine the content of the conversations. We add that in affirming the district court's decision, "we in no way sanction or approve of police conduct which effectively prevents defendants from freely communicating with their attorneys in private." *Lombard*, 146 Vt. at 415, 505 A.2d at 1185. Although the State represented at oral argument that there was no practice of videotaping such conversations and steps had been taken in Addison County to ensure that "inadvertent" recordings were no longer made, we reiterate this Court's warning that we will not tolerate police practices which unjustifiably interfere with the statutory right of a defendant to be afforded a meaningful opportunity to consult with counsel before submitting to a breath test. See *id.*

*Affirmed.*

**Morse, J.,** concurring. I join in the judgment and opinion of the Court, but I write separately to underscore a particular aspect of this case that I find significant. Contrary to the dissent, there is no support for a finding that the State, through its agents, acted with a nefarious motive in taping defendant's consultation with his attorney, or that they intended to capture the substance of defendant's conversation. Rather, it appears it was the unintended result of a practice aimed at addressing an entirely separate concern. Where the violation, like here, is unintentional and not the product of a conscious disregard for a defendant's right to privately consult with an attorney, and no prejudice flows from the violation, the trial court's decision not to suppress defendant's refusal or dismiss the charge was proper.

I am authorized to say that Justice Dooley joins in this concurrence.

**Johnson, J.,** dissenting. If the right to counsel guaranteed by 23 V.S.A. § 1202(c) is to have any meaning, it must entail, at the very least, the right to consult with one's attorney in relative privacy. The Court's holding that although the police department violated defendant's right to counsel, defendant is not entitled to any remedy, eviscerates that right and mocks the hallmark of consultation with a lawyer — the confidentiality of attorney-client communications. Because I believe that when a police department routinely and deliberately creates a video and audio record of a defendant's conversation with his attorney, the only appropriate remedy is dismissal of the charge, I respectfully dissent.

It is axiomatic that client communications with an attorney are confidential. It is this confidentiality that allows for a free and uninhibited conversation between attorney and client, and without the assurance of which, a client in defendant's position might not reveal information crucial to his defense. "The statutory right to counsel . . . includes the right to communicate freely with an attorney in private." *Pfeil v. Rutland Dist. Ct.*, 147 Vt. 305, 309, 515 A.2d 1052, 1055 (1986). The practice at issue here, surreptitiously videotaping defendant while he speaks on the telephone with his attorney, is no different from stationing a police officer in the room with the defendant. The effect is the same — it destroys the basis for open conversation with an attorney by burdening the defendant with the fear that what he says may be heard and used against him by the police.[1]

---

[1] There are, however, circumstances where such monitoring may be necessary, such as when the defendant poses a security risk. In those cases, the need for confidentiality

To evaluate whether the right to counsel has been violated, our inquiry is, as the majority recognizes, an objective one. *State v. West*, 151 Vt. 140, 145, 557 A.2d 873, 876 (1988). We must formulate that inquiry in a manner that focuses on the police conduct, because "[t]o allow unauthorized police action to cloud the otherwise voluntary nature of the decision to refuse testing would be inconsistent with" the right to counsel. *State v. Carmody*, 140 Vt. 631, 636, 442 A.2d 1292, 1295 (1982). We ask, therefore:

> whether, under the totality of the circumstances, reasonable efforts were made to afford defendant an opportunity to communicate privately with counsel. *Neither the subjective beliefs of the defendant nor those of the police are determinative*; rather, the test focuses on *the nature of the physical setting within which the events take place* and, in order to avoid reliance on after-the-fact, self-serving declarations of either the police or defendant, how a reasonable person in the defendant's position would have understood his situation.

*West*, 151 Vt. at 145, 557 A.2d at 876-77 (emphasis added). Under the facts of this case, the appropriate inquiry is whether a reasonable person would feel free and uninhibited to consult with his attorney if he knew the police were monitoring his every word.

According to this standard, the trial court's error is clear. The court applied a subjective test by focusing on whether *this* defendant actually felt inhibited, not whether a reasonable person, apprised of his situation, would have felt inhibited. The result of the court's error is that it rewards the police for their subterfuge. Had police officers physically sat in on defendant's conversation, it is quite possible that defendant would have been inhibited in his conversation with his attorney. But because this monitoring was done without defendant's knowledge, the police avoided the chilling effect that their physical presence might have had. Indeed, the court's determination that defendant did not feel inhibited under the circumstances is a meaningless finding because defendant *did not know* that his conversation was being videotaped. It is certainly no surprise that defendant did not feel inhibited in his conversation when he was unaware of the intrusion into that conversation. Thus, defendant's state of mind is not at all probative of the relevant legal criteria.

---

must be balanced against the requirements of public safety. Here, both the trial court and the majority acknowledge that defendant did not pose a security risk.

Applying a truly objective inquiry, there can be no doubt, as the majority concludes, that there was a violation of the statutory right to counsel. Defendant's openness and lack of inhibition can be attributed to his mistaken assumption that his conversation was private. A reasonable person who knew that his conversation was being listened to would not conclude that he was afforded "the right to communicate freely with an attorney in private." *Pfiel*, 147 Vt. at 309, 515 A.2d at 1055.

The majority, however, concludes that in order to determine whether defendant was prejudiced by this violation depends, in part, on his subjective experience.[2] The majority's conclusion "mak[es] clearly impermissible police practices permissible, depending on how they might have been perceived by the defendant." *West*, 151 Vt. at 148, 557 A.2d at 878 (Mahady, J., dissenting). Such analysis compounds the error made in *West*, where the Court failed to apply the objective inquiry that it purported to adopt. In *West*, the Court held that there was no violation of the defendant's right to counsel when, in fact, the defendant spoke with his attorney while "one police officer remained near the cubicle, and another paced the adjacent aisle, periodically checking on defendant." *West*, 151 Vt. at 141, 557 A.2d at 874. The Court relied heavily on the defendant's own testimony that he did not request more privacy, even though he knew he was entitled to it. *West* is distinguishable, however, because in that case the defendant *at least knew* that he was being monitored by the police, and thus it is conceivable that his testimony approximates the perspective of the reasonable person. Here, defendant was completely unaware that he was under watch and his conversation was being recorded, so it makes no sense to rely on defendant's testimony.

Thus, the majority's contention that defendant must show prejudice fails to recognize that a defendant would be hard-pressed to present evidence that *surreptitious* videotaping interfered with his contact with his attorney. The effect of the majority's reasoning is to condone secret videotaping as long as a defendant is unaware he is being monitored. This error demands a remedy in part because the taping of

---

[2] A prejudice inquiry asks whether defendant was harmed by the use of the taped conversation in the criminal proceeding. Although I disagree with the majority on the answer to this question, see 174 Vt. at 37-38, 800 A.2d at 470-71, I recognize that this is the proper question on the prejudice element of defendant's claim. Requiring defendant to prove that he was subjectively inhibited in order to show "prejudice" muddles the line between the objective test for a violation the majority purports to adopt and the subjective test used by the trial court, and in *West*, 151 Vt. at 145, 557 A.2d at 877.

defendant's conversation with his attorney was not an isolated incident, but an ingrained practice of these barracks, one that outwardly flaunts its disrespect for the importance of confidential attorney communication.[3]

The remedy for the violation of the right to counsel in this case ought to be outright dismissal. The facts of this case show that at every possible opportunity both the police and the state's attorney demonstrated a flagrant disregard for defendant's right to consult an attorney in private. After the police violated defendant's statutory right, the state's attorney exacerbated the error by printing defendant's conversation in the record so as to demonstrate that defendant was not inhibited. Because "the impact of actions seen as coercive or restrictive is almost impossible to measure after the fact . . . we are compelled to the position that a mere demonstration that such actions occurred creates a flaw in the procedure." *Carmody*, 140 Vt. at 636, 442 A.2d at 1295. To deter this conduct by the police and to protect the right to counsel in these cases, dismissal is the only appropriate remedy. The New Jersey Supreme Court warned that dismissal is the appropriate remedy where the violation recurs: "If it becomes clear that such eavesdropping is not an isolated occurrence, any indictment founded upon this surveillance shall be dismissed. Fundamental fairness would require [us] to eliminate the risk of apparent judicial tolerance and to deter more effectively the illegal practices themselves." *State v. Sugar*, 417 A.2d 474, 481 (N.J. 1980).

Additionally, the assurance that the conversation was not listened to or will not be used in defendant's prosecution rings hollow. Because the prosecution has already viewed the videotape of the conversation, there is no way to ensure that defendant will not be harmed by the information contained therein. Defendant could suffer a detriment more subtle than the explicit use of the contents of the conversation against him. As the Third Circuit concluded under similar circumstances, "it is highly unlikely that a court can . . . arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case." *United States v. Levy*, 577 F.2d 200, 208 (3d

---

[3] Although the State represented at oral argument there was no practice of videotaping attorney-client conversations, that contradicts the testimony of the trooper involved in this case. At the suppression hearing, Trooper Whitcomb testified as follows:

Q: As a matter of usual processing do you videotape?

A: Yes . . . we do not cut the videotape off.

Cir. 1978). Although a DUI prosecution is a relatively simple matter, the point remains that any knowledge by the prosecution of a defendant's private contact with his attorney undermines the integrity of the entire process. Here that concern is justified because the state's attorney spread the whole conversation on the record to establish that defendant was not inhibited. Even if the state's attorney had not acted so carelessly, however, disclosure of the conversation to at least the trial court would be required to determine whether defendant was prejudiced by the violation of his right to consult an attorney.[4] Given the sensitivity of the information contained in an attorney-client conversation and the uncertainty of assertions of its nonuse, other cases that have confronted the violation of attorney-client confidence have concluded that dismissal is the only remedy that would "effectively discourage the odious practice of eavesdropping on privileged communication between attorney and client." *State v. Cory,* 382 P.2d 1019, 1023 (Wash. 1963).

Finally, I am persuaded that dismissal of the case is warranted in light of the reason advanced by the State to justify its routine procedure. The State claims that the reason the videotape is not stopped during conversation with attorneys is to avoid accusations that the tape had been tampered with. It cannot be the case, however, that the state police may commit one flagrant violation of the law by taping confidential conversations in order to avoid *potential,* future allegations of another. Even if the concerns for these potential allegations are valid, recording conversations with attorneys is hardly the only solution. For instance, the police could at least inform the suspect that he was being recorded, the tape could be stopped and started with consent from the suspect, or the police could disconnect the recording of volume leaving only the image for that period of time. Thus, the State has failed to identify any exigency that would necessitate such an intrusive violation into defendant's rights.

Almost twenty years ago, we found no violation of the right to counsel when police officers were nearby the defendant when he spoke with his attorney because the defendant posed "a legitimate security risk." *State v. Lombard,* 146 Vt. 411, 415, 505 A.2d 1182, 1185 (1985). At

---

[4] The majority acknowledges this error and suggests that such information could be viewed in camera or under seal. See 174 Vt. at 30 n.*, 800 A.2d at 465 n.*. Nevertheless, dismissal obviates the need for even this limited disclosure. The content of defendant's discussion with his attorney is irrelevant to the question of whether he was denied the right to consult with his attorney in private, and it should be protected as vigorously as possible, including avoiding divulgence to a judge, when possible.

the conclusion of that opinion we warned that "we in no way sanction or approve of police conduct which effectively prevents defendants from freely communicating with their attorneys in private. Defendants must be afforded a meaningful opportunity to consult with counsel before submitting to a breath test. Police practices [that] unjustifiably interfere with this right cannot be tolerated." *Id.* Today, the Court repeats this warning at the end of its opinion. 174 Vt. at 33, 800 A.2d at 467-68. We cannot expect police to take these admonitions seriously if there are no consequences for failing to heed the Court's own cautions. I respectfully dissent.

I am authorized to state that Justice Skoglund joins this dissent.