COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Elder and Senior Judge Hodges
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.      Record No. 1889-03-2                     JUDGE LARRY G. ELDER
                                                 DECEMBER 16, 2003
RASHAD J. FRAIERSON AND
 WENDELL V. McNEAL


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellant.

Gregory R. Sheldon (Goodwin, Sutton & DuVal, P.L.C., on brief),
for appellee Fraierson.

William P. Irwin, V (Bowen, Champlin, Carr & Rockcharlie, on
brief), for appellee McNeal.


Rashad J. Fraierson and Wendell V. McNeal (defendants) stand indicted for possession of

cocaine with intent to distribute and simultaneous possession of a firearm and a controlled

substance.  Fraierson also is charged with possession of a firearm by a convicted felon.  Pursuant

to Code § 19.2-398, the Commonwealth appeals a pretrial ruling granting defendants' motions to

suppress all evidence resulting from a search of defendants and their automobile.  The trial court

ruled that partially corroborated information from an informant provided the officers with

reasonable suspicion for an investigative detention but that the officers' actions "amounted to an

arrest, unsupported by probable cause," and it suppressed the evidence on that basis.

_____
* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

We assume without deciding that the officers' approaching the vehicle with their weapons drawn and handcuffing defendants constituted an arrest rather than an investigative detention. Nevertheless, the officers had reasonable suspicion for the stop, as conceded by defendants, and that reasonable suspicion put the officers in a position to see McNeal's furtive movements and detect the odor of burned cocaine emanating from the vehicle.[1] No legally relevant nexus existed between the amount of force used to effect the stop and the officers' detection of the facts that gave them probable cause to arrest. Thus, we reverse the trial court's

---

[1] In argument on the motions to suppress, defendants challenged only "the stop [of the vehicle] and the detention of its occupants." They conceded the officers had reasonable suspicion for an investigatory stop but argued the initial seizure, with weapons drawn, constituted an arrest for which the informant's partially corroborated tip failed to provide probable cause.

Defendants did not challenge the officers' authority for the frisks based on what they learned during the course of the stop. Defendants also did not challenge the existence of probable cause to arrest based on what the officers learned during the course of the stop. In fact, Fraierson's counsel objected on relevance grounds to testimony about what was found during the frisk of Fraierson. Fraierson's counsel then stated that the "stop and detention of the [vehicle's] occupants" was the only issue on the suppression motion, and McNeal's counsel responded, "That's correct, Your Honor." Defense counsel subsequently asked the court "not to consider any of [the] testimony about what happened after the officers pull[ed] up, surround[ed] the car and approach[ed] it with guns drawn," arguing the court's consideration of "the cocaine and the gun" would be "bootstrap[ping]."

In granting the motion to suppress, the trial court adopted defendants' reasoning, ruling as follows:

> The Court finds that the defendants were stopped, forcibly removed from the vehicle at gunpoint and placed on the ground in handcuffs. The Court does not find this to be consistent with a brief investigatory detention as envisioned in Terry . . . and its progeny. The facts support a finding that the defendants were placed under arrest. The Court finds that at the time of the arrest, *as described above*, the police did not possess probable cause to arrest the defendants.

(Emphasis added).

On appeal, defendants argue only that the trial court properly ruled the *initial* seizure amounted to an arrest without probable cause and that this ruling compelled suppression of the fruits of that arrest.

granting of the motion to suppress and remand for additional proceedings consistent with this opinion.

## I.

## BACKGROUND

Police officers obtained information from a confidential informant with an established knowledge of the local drug trade that a man he knew as "Todd" would meet the informant at a particular time and location to sell him $100 worth of crack cocaine. Officers Gordon, Helton and Gotsy, accompanied by the informant, waited at the designated location for the arrival of "Todd." When an older model Bonneville matching the description of the vehicle in which "Todd" said he would be traveling arrived at that location,[2] the officers pulled their vehicles in front of and behind the Bonneville, blocking its exit.

Officer Helton drew his service weapon and approached the driver, later identified as Fraierson. While Helton approached, he saw the front passenger "leaning down towards his feet," and he notified Officer Gotsy of this fact. Helton then identified himself to Fraierson as a police officer and ordered him to open the door. When Fraierson eventually complied, Helton smelled burned crack cocaine coming from the vehicle. Officer Helton then pulled Mr. Fraierson from the vehicle, placed him in handcuffs, and frisked him.

At about the same time, Officer Gotsy drew his service revolver and approached the front seat passenger, later identified as McNeal. Based on information from Officer Helton that McNeal had placed something under the seat, Gotsy ordered McNeal to open the door. When McNeal eventually complied, Officer Gotsy placed him in handcuffs and put him on the ground.

---

[2] Additional facts supported the conclusion that "Todd" was traveling in that vehicle. However, because the trial court found the officers had reasonable suspicion for the stop and defendants concede the existence of reasonable suspicion, we find it unnecessary to detail all those facts here.

Officer Gotsy frisked McNeal for weapons but found none. Gotsy then looked under the front passenger seat, where he found a semiautomatic handgun with one round in the chamber.

After the defendants had been allowed to get up from the ground,[3] Officer Gordon drove the informant through the parking lot "to get a better look at who was in the [Bonneville]." The informant pointed to McNeal and said, "that's Todd."

After the defendants were charged with the instant offenses, they moved to suppress cocaine and a firearm recovered from the searches of their persons and vehicle. The trial court granted the motions. It ruled that "the informant provided police with sufficient information corroborated at the scene to provide the police with a reasonable articulable suspicion to make an investigative detention of the automobile." However, it also found "[t]he facts support a finding that the defendants were placed under arrest" when the officers "forcibly removed [them] from the vehicle at gunpoint and placed them on the ground in handcuffs." It ruled the arrests were not supported by probable cause and suppressed the cocaine and firearm on that basis.

II.

ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights. Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). On appeal, we view the evidence in the light most favorable to the prevailing party, here the defendants, granting to the evidence all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them . . . ." McGee v.

---

[3] A third officer removed from the vehicle and frisked a third occupant. No events related to that third occupant are at issue in this appeal.

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). However, we review *de novo* the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case. Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

An officer who has reasonable, articulable suspicion that an occupant of a vehicle is involved in criminal activity may stop the vehicle "in order to identify [the occupants], to question [them] briefly, or to detain [them] briefly while attempting to confirm or dispel the suspicions providing the basis for the stop." Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705 (1985). The Fourth Amendment also permits the police to order the driver and passengers out of the car pending completion of the investigatory stop. Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6, 98 S. Ct. 330, 333 n.6, 54 L. Ed. 2d 331 (1977) (driver); Maryland v. Wilson, 519 U.S. 408, 414, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997) (passengers).

> [A] reasonable, articulable suspicion of the presence of drugs [gives] rise to a concern for the presence of guns, which, "in the absence of factors allaying [the officer's] safety concerns, . . . [permits the officer to] pat [the occupants of the vehicle] down briefly for weapons to ensure the officer's safety and the safety of others. . . . [W]hen drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect. They are in the restricted space of the vehicle presumably by choice and presumably on a common mission."

Logan v. Commonwealth, 29 Va. App. 353, 360, 512 S.E.2d 160, 163 (1999) (quoting United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998)). That reasonable suspicion also permits "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden." Michigan v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201 (1983).

Here, when the officers approached the Bonneville, they observed McNeal making furtive movements. Both Fraierson and McNeal resisted the officers' efforts to remove them from the car, and when Fraierson finally unlocked and opened his door, Officer Helton smelled burned crack cocaine. These observations strengthened the information the officers already had that one or more occupants possessed cocaine and gave the officers reasonable suspicion to believe one or more occupants might be armed and dangerous, as well. When the officers discovered a loaded weapon beneath McNeal's seat, that discovery, coupled with the informant's tip and the odor of burned crack cocaine, gave them probable cause to arrest both men.

Assuming the degree of force used to effect the investigatory stop was excessive, no legally significant nexus existed between the force used and the officers' discovery of the cocaine and firearm. The "exclusionary rule" prevents evidence obtained in violation of one's Fourth Amendment rights from being admitted into evidence against him in a criminal prosecution. Commonwealth v. Ealy, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991). The purpose of the exclusionary rule is "'to deter police misconduct.'" Johnson v. Commonwealth, 21 Va. App. 172, 175, 462 S.E.2d 907, 909 (1995) (quoting Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662 (1992)). Where the illegal activity of the police did not lead to discovery of evidence a party seeks to exclude, the exclusion of that evidence does not meet the purpose of the exclusionary rule. Id.

In determining whether evidence is derivative of the illegal act and, therefore, barred as "fruit of the poisonous tree," the question is "'whether[,] granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963) (quoting Maguire, Evidence of Guilt 221 (1959)). Evidence is obtained by means "sufficiently

distinguishable" to be admissible despite illegality if, *inter alia*, the "evidence [is] attributed to an independent source." Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974). "[E]vidence is not 'fruit of the poisonous tree' simply because 'but for' an unlawful search [or seizure] it would not have come to light." Ealy, 12 Va. App. at 755, 407 S.E.2d at 688 (quoting Segura v. United States, 468 U.S. 796, 815, 104 S. Ct. 3380, 3391, 82 L.Ed.2d 599 (1984)). However, "'evidence will not be excluded as "fruit" unless the illegality is *at least* the "but for" cause of the discovery of the evidence.'" Id. at 755 n.2, 407 S.E.2d at 688 n.2 (quoting Segura, 468 U.S. at 815, 104 S. Ct. at 3391 (emphasis in Ealy)).

Applying this preliminary "but for" test here, we conclude the evidence was not subject to exclusion unless we can say that, *but for the degree of force used to effect the investigative detention, the officers would not have discovered the cocaine and firearm*. This statement is inaccurate. It was the investigative detention--for which the trial court found the police had reasonable suspicion--and not the degree of force with which the officers effected that detention that placed the officers in a position to see McNeal's furtive movements and detect the odor of burned cocaine, the facts that supported the weapons frisks and led to the officers' development of probable cause for arrest. See United States v. Ibarra-Sanchez, 199 F.3d 753, 760-62 (5th Cir. 1999), as modified, 203 F.3d 356, 357-58 (5th Cir. 2000) (holding that where officers with reasonable suspicion to stop van smelled marijuana emanating from inside, degree of force used during stop was irrelevant to legality of search because officers' ability to smell marijuana and "their decision and ability to search the van depended in no way on the manner in which they had previously detained the appellants after the stop"); State v. Jewett, 532 A.2d 958, 960-61 (Vt. 1986) (holding that where officer had reasonable suspicion for traffic stop for possible DUI, during which he detected odor of alcohol and observed defendant's physical appearance and lack

of coordination, defendant failed to establish why allegedly illegal weapons frisk supported suppression of observations establishing intoxication).

Thus, no legally significant nexus existed between the degree of force used to effect the stop and the officers' discovery of the cocaine and firearm, and the trial court's suppression of the evidence was error.

III.

For these reasons, we hold the trial court erroneously ruled that the officers' seizure and search of the defendants were unreasonable. We reverse the trial court's granting of the motion to suppress and remand for additional proceedings consistent with this opinion.

Reversed and remanded.

Benton, J., dissenting.

The determining factor in this appeal is our application of the standard of review. It is well established that when the Commonwealth appeals from the trial judge's order suppressing evidence, "[w]e view the evidence in a light most favorable to [the accused], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In reversing the trial judge's ruling, the majority opinion finds, however, that an officer saw "furtive movements" when he approached the car and detected "the odor of burned cocaine" when he opened the door. The trial judge made no such findings.

The trial judge's letter opinion contains specific findings under the heading "FINDING," including the following:

> The Court finds that the defendants were stopped, forcibly removed from the vehicle at gunpoint and placed on the ground in handcuffs. The Court does not find this to be consistent with a brief investigatory detention as envisioned in Terry, supra and its progeny. The facts support a finding that the defendants were placed under arrest. The Court finds that at the time of the arrest, as described above, the police did not possess probable cause to arrest the defendants.

Nowhere in his five paragraph statement of findings does the trial judge find that the front passenger acted furtively when the four officers rushed the car with their guns drawn. Likewise, the trial judge made no finding that the officer detected burning cocaine. Although the prosecutor argued that one of the four officers smelled burnt cocaine, the trial judge was not required to accept that evidence especially in view of the absence of similar testimony from the other three officers. Indeed, no evidence proved that the officers found any burnt or burning cocaine in the car when they searched it. When the trial judge ruled, "that at the time of the arrest . . . the police did not possess probable cause to arrest the defendants," he implicitly rejected the officer's testimony of "furtive movements" and an odor indicating burned cocaine.

- 9 -

Upon the trial judge's view of the evidence, the police intended to arrest the defendants when they rushed the car. Acting solely upon the uncorroborated information of an informant who was not proved reliable, the officers seized the defendants in a manner objectively establishing an arrest, and they "did not possess probable cause to arrest the defendants."

"Probable cause must exist before the warrantless arrest, and an incident search may not precede and serve to justify the arrest." Bryson v. Commonwealth, 211 Va. 85, 87, 175 S.E.2d 248, 251 (1970). Although the police had sufficient information to justify an investigatory detention, the trial judge found that the police did not have probable cause to arrest the defendants. The purpose and degree of restraint distinguish an investigatory detention from an arrest. In an investigatory detention, the police may temporarily detain a person to ascertain whether a crime has been or is about to be committed. See Terry v. Ohio, 392 U.S. 1, 24-26 (1968). If no such determination is made, the police must release the person. Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984). An arrest, by contrast, is "the initial stage of a criminal prosecution" where complete restraint of the person is justifiable. Terry, 392 U.S. at 26.

The Supreme Court has held that "at some point in the investigative process, police procedures can qualitatively and quantitatively be so intrusive with respect to a suspect's freedom of movement and privacy interests as to trigger the full protection of the Fourth and Fourteenth Amendments." Hayes v. Florida, 470 U.S. 811, 815-16 (1985).

> Terry and its progeny . . . created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detentions may be "investigative" yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest.

Florida v. Royer, 460 U.S. 491, 499 (1983). In determining whether an arrest has occurred, "the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." McCarty, 468 U.S. at 442.

The evidence in this case was sufficient to prove the police restrained the defendants to a degree associated with a formal arrest. Thus, the trial judge made a "finding that the defendants were placed under arrest" when they were pulled from the car, thrown to the ground, and handcuffed. The search occurred after these events. As the trial judge ruled, "[p]robable cause to arrest must exist exclusive of the incident search." See Sibron v. New York, 392 U.S. 40, 62-63 (1968).

I would hold that the evidence, when viewed in the light most favorable to the defendants does not permit a conclusion that there was either "furtive movements" or an "odor of burned cocaine." Only by relying upon the Commonwealth's theory of the case and viewing the evidence in the light most favorable to the Commonwealth, can we ignore the trial judge's findings and suppose a finding the trial judge implicitly rejected. As the trier of fact, the trial judge was not required to accept in toto the Commonwealth's theory of the evidence. Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Instead, the trial judge found that the officers pulled the men from the car under circumstances that constituted an arrest, then searched the car, and found the cocaine and gun. In evaluating the lawfulness of the seizure, we "must give deference to the factual findings of the trial court." Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003).

For these reasons, I would affirm the trial judge's ruling suppressing the evidence.