923 A.2d 585 (2007)
2007 VT 24
STATE of Vermont
v.
James PETERSON.
No. 05-349.
Supreme Court of Vermont.
April 6, 2007.
*586 John T. Quinn, Addison County State's Attorney, and Christopher E. Perkett, Deputy State's Attorney, Middlebury, for Plaintiff-Appellee.
Matthew F. Valerio, Defender General, and Kelly Green, Appellate Defender, Montpelier, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. DOOLEY, J.
The issue in this case is the scope of the exclusionary rule in criminal cases, specifically, whether physical evidence obtained as a result of a violation of defendant's Miranda rights must be excluded at trial. We conclude that under the Vermont Constitution, Chapter I, Article 10, and the Vermont exclusionary rule, physical evidence obtained in violation of Miranda rights must be suppressed. We reverse in part and remand.
¶ 2. Defendant James Peterson appeals the denial of two suppression motions. Both involve a core set of undisputed facts. Defendant was looking for his girlfriend and drove his car next to a police vehicle so that he and the officer could speak out of their windows. Upon speaking to defendant, the officer smelled marijuana through the vehicle window. During the conversation, defendant admitted that he had been convicted of a drug offense and that he had a marijuana "roach" in his vehicle. The officer than asked defendant to exit the vehicle, which he did.
¶ 3. The officer patted defendant down; he found no weapons, but smelled the odor of marijuana emanating from the front pocket of defendant's sweatshirt. The officer patted the pocket and, feeling nothing, used his flashlight to look inside the pocket, where he saw green flakes of marijuana plant. When asked, defendant admitted he had picket the marijuana earlier that day from a plant or two he had at home for personal use. The officer then asked defendant for consent to search both his vehicle and his home; defendant consented to these searches both verbally and in writing. The written consent form identified defendant's residence to be searched as "3141 Jersey St. & property" in Panton, Vermont.
¶ 4. After searching defendant's vehicle and finding a burned marijuana cigarette as well as a blanket smelling of marijuana, the officer and a state police trooper proceeded to defendant's residence. Defendant was placed in handcuffs for protection of the police, but was advised by the officer that he was not under arrest. The handcuffs were removed upon arrival at defendant's residence and were intermittently taken on and off while the officers conducted the home search. During the home search, the officer located a garbage bag containing a significant amount of marijuana and marijuana paraphernalia. Defendant led the officers to one marijuana plant growing behind his house.
¶ 5. Upon completion of the home search, the officer informed defendant that they would proceed to the Vergennes Police Department for processing. He placed defendant in handcuffs and instructed him to walk in front of the officer. During the walk, the officer expressed that he doubted so much marijuana came from just one plant, and asked defendant whether *587 he had other marijuana plants. He did not inform defendant of his Miranda rights. Defendant eventually admitted to the existence of other plants. The officer asked defendant to show him the other plants, and the two men walked through a wooded area with high brush to a plot where twenty-seven growing plants were located. The plot where the twenty-seven plants were growing is not on, nor visible from, defendant's property.
¶ 6. As a result of the search, the police charged defendant with felony possession of more than twenty-five plants of marijuana, 18 V.S.A. § 4230(a)(4), and felony possession of marijuana consisting of an aggregate weight of one pound or more. Id. § 4230(a)(3). Defendant moved to suppress "all evidence obtained by Vermont Law Enforcement Officials subsequent to his being taken into custody," asserting the officers in question violated his rights to be free from self-incrimination and unlawful search and seizure under both the Vermont and United States Constitutions. Defendant's primary argument was that the police had engaged in custodial interrogation, but failed to give defendant the required warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the finding of the twenty-seven marijuana plants was the result of the unwarned interrogation. The State responded primarily that the search was pursuant to defendant's consent.
¶ 7. Following the testimony and argument on the motion, the court sua sponte requested that the parties brief the impact of United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). After receiving the additional briefing, the court denied defendant's motion to suppress, basing its denial on Patane. The court concluded that defendant was in custody at the time he was questioned about possible additional marijuana plants, and as such was entitled to Miranda warnings at that time prior to further interrogation. Since it was undisputed that the police did not give defendant Miranda warnings, the court held that any statements made after defendant was in custody were made in response to interrogation that violated Miranda. The court denied the motion to suppress the twenty-seven plants, however, under Patane, which held that physical evidence uncovered as a result of a Miranda violation need not be suppressed. Patane, 542 U.S. at 636, 124 S.Ct. 2620. The court rejected defendant's additional argument that Patane is not good law under the Vermont Constitution.
¶ 8. Following the decision, defendant entered into a conditional plea of guilty allowing him to appeal the denial of his motion to suppress. See V.R.Cr.P. 11(a)(2). Defendant raises two issues on appeal: (1) whether the search of defendant's pocket, vehicle, and home violated the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution; and (2) whether the twenty-seven marijuana plants must be suppressed.
¶ 9. We conclude that the first issue defendant seeks to raise is not before us. As we stated above, defendant's motion to suppress was limited to evidence obtained after defendant was taken into custody. The motion specifies that defendant was taken into custody after the police had searched his home and he led them to the one plant growing behind the house. He never challenged the search of his pocket, vehicle, or home in that motion. In an appeal based on a conditional plea, we are limited to review of the decision on the motion specified in the plea agreement. V.R.Cr.P. 11(a)(2). In this case, the motion did not include the first issue defendant seeks to raise on appeal.
*588 ¶ 10. Defendant nevertheless urges that we address the first issue because (1) the trial court never responded to defendant's suppression arguments, but instead redirected defendant's challenge to the applicability of Patane, or (2) as a matter of plain error. The first ground does not help defendant; his motion to suppress never challenged the search of the pocket, vehicle, or home, and the only evidence he sought to suppress was the twenty-seven marijuana plants. His second ground  that we should conduct plain error review  responds to his nonpreservation, but not to the scope of review on a conditional plea. As we stated, we are limited on review of a conditional plea to the motion specified in the plea agreement, here defendant's motion to suppress. Our conditional plea procedure is based on Federal Rule of Criminal Procedure 11. Reporter's Notes, V.R.Cr.P. 11. The decisions under the federal rule are clear that a defendant cannot raise appeal issues separate from the pretrial motion specified in the plea agreement. See 1A C. Wright, Federal Practice & Procedure § 175, at 238-39 (3d ed. 1999) (collecting cases). Thus, if the specified motion challenges one search, the defendant cannot challenge the validity of a separate search on appeal. United States v. Echegoyen, 799 F.2d 1271, 1275-76 (9th Cir.1986).
¶ 11. This leaves us solely with the second issue raised by defendant  the legality of the use of the twenty-seven marijuana plants as evidence. Although this issue is broadly stated, it has become relatively narrow because of the decision of the district court and the scope of the parties' argument. The State originally argued that the property on which the plants were found was within the scope of defendant's consent to search, but the district court found otherwise. The district court also found that defendant was in custody when he was interrogated about the location of other marijuana plants, and, therefore, the police violated Miranda in failing to give him the required warnings prior to the interrogation. Finally, the district court concluded that if the governing law was stated in Patane, the motion to suppress had to be denied. The parties have not challenged these findings and conclusions. Thus, the issue for us is narrowed to whether we will follow United States v. Patane under the Vermont Constitution.
¶ 12. Patane involved an arrest of a convicted felon for violating an abuse prevention order. 542 U.S. at 634, 124 S.Ct. 2620. Without completing Miranda warnings, the arresting officer asked the defendant whether he had a gun because gun possession was illegal for a felon, and there was a report that the defendant had a gun. Id. at 635, 124 S.Ct. 2620. Under persistent questioning, the defendant told the officer that he had a gun in his bedroom and gave permission to retrieve it. Id. When the defendant was charged with illegally possessing a firearm, he moved to suppress the gun as the fruit of a confession given as a result of a custodial interrogation without Miranda warnings. Id.
¶ 13. A majority of the United States Supreme Court concluded that the gun was admissible, but it did so in two separate opinions that differed in part. The plurality opinion written by Justice Thomas and joined by Chief Justice Rehnquist and Justice Scalia held:
[T]he Miranda rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause. The Self-Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the Miranda rule to this context. And just as the *589 Self-Incrimination Clause primarily focuses on the criminal trial, so too does the Miranda rule. The Miranda rule is not a code of police conduct, and police do not violate the Constitution (or even the Miranda rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule articulated in cases such as Wong Sun does not apply.
Id. at 636-37, 124 S.Ct. 2620. The plurality went on to explain that because prophylactic rules "sweep beyond the actual protections of the Self-Incrimination Clause, any further extension of these rules must be justified by its necessity for the protection of the actual right against compelled self-incrimination." Id. at 639, 124 S.Ct. 2620 (internal citation omitted). It concluded that a "blanket suppression rule could not be justified by reference to the Fifth Amendment goal of assuring trustworthy evidence or by any deterrence rationale," id. at 639-40, 124 S.Ct. 2620 (internal quotations omitted), and that such a rule would therefore violate the Court's requirement that it maintain "the closest possible fit . . . between the Self-Incrimination Clause and any rule designed to protect it." Id. at 641, 124 S.Ct. 2620.
¶ 14. The concurring opinion of Justices Kennedy and O'Connor accepted part of the plurality's rationale. They concluded that admission of the gun did "not run the risk of admitting into trial an accused's coerced incriminating statements against himself" and went on to state:
In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation.
Id. at 645, 124 S.Ct. 2620 (Kennedy, J., concurring).
¶ 15. Three of the dissenters, Justices Souter, Stevens and Ginsburg, defined the issue as "whether courts should apply the fruit of the poisonous tree doctrine lest we create an incentive for the police to omit Miranda warnings before custodial interrogation." Id. (Souter, J., dissenting) (internal citation omitted). They concluded that the majority decision created an "unjustifiable invitation to law enforcement officers to flout Miranda when there may be physical evidence to be gained." Id. at 647, 124 S.Ct. 2620. Justice Breyer joined the dissent except where the failure to give Miranda warnings "was in good faith." Id. at 648, 124 S.Ct. 2620 (Breyer, J., dissenting).
¶ 16. The decision in Patane is an extension of earlier decisions in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), and Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). In Tucker, a case involving a custodial interrogation that had occurred before the Court decided Miranda, the police used the defendant's unwarned statement to identify a witness against him. 417 U.S. at 436, 94 S.Ct. 2357. In response to the defendant's argument that the testimony of the witness identified through the custodial interrogation should be suppressed, the Court stated:
Here we deal, not with the offer of respondent's own statements in evidence, but only with the testimony of a witness whom the police discovered as a result of respondent's statements. This recourse to respondent's voluntary statements does no violence to such elements of the adversary system as may be embodied in the Fifth, Sixth, and Fourteenth Amendments.
Id. at 450, 94 S.Ct. 2357. In Elstad, the Court explained that the holding in Tucker was that, because there was no violation of the self-incrimination right of the Fifth *590 Amendment but only the prophylactic rules of Miranda, the "doctrine expressed in Wong Sun [v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] that fruits of a constitutional violation must be suppressed" did not apply. 470 U.S. at 308, 105 S.Ct. 1285. The Court went on to hold that the reasoning of Tucker applied "when the alleged `fruit' of a noncoercive Miranda violation is neither a witness nor an article of evidence but the accused's own voluntary testimony." Id. Patane involved an article of evidence which Elstad suggested would not be subject to suppression because the fruit-of-the-poisonous-tree doctrine does not apply. At its broadest, Patane holds that the conduct of custodial interrogation without Miranda warnings, even where it results in a confession, is not a poisonous tree with consequences beyond suppression of the confession.
¶ 17. In examining whether we should follow Patane under the Vermont Constitution, we start with the context of our decision. The right against self-incrimination is guaranteed in the Fifth Amendment to the United States Constitution, which prohibits compelling a criminal defendant to "be a witness against himself." U.S. Const. amend. V. Equivalently, Article 10 of the Vermont Constitution prohibits compelling a person "to give evidence against oneself." Vt. Const. ch. 1, art. 10. We have held, with respect to adults, that "the Article 10 privilege against self-incrimination and that contained in the Fifth Amendment are synonymous." State v. Rheaume, 2004 VT 35, ¶ 18, 176 Vt. 413, 853 A.2d 1259; see State v. Ely, 167 Vt. 323, 330-31, 708 A.2d 1332, 1336 (1997) (declining to find significance in textual distinction between the two provisions). Consistent with this view, we have held that evidence gathered in violation of the prophylactic rules established in Miranda is also a violation of Article 10. State v. Brunelle, 148 Vt. 347, 355 n. 11, 534 A.2d 198, 204 n. 11 (1987); see also Rheaume, 2004 VT 35, ¶ 15, 176 Vt. 413, 853 A.2d 1259. We have not, however, gone beyond Miranda and found a violation of the principles of that decision where the United States Supreme Court has not done so. Rheaume, 2004 VT 35, ¶ 15, 176 Vt. 413, 853 A.2d 1259.
¶ 18. If this case involved the substance of Miranda, for example, the nature of the warnings or the circumstances under which they must be given, the State would have a strong argument that our precedents require that we not go beyond the limits in the decisions of the United States Supreme Court. This, however, is a case in which the district court found a violation of Miranda under accepted principles and defendant made a confession to an additional crime under custodial interrogation, a confession that is inadmissible under Miranda. The issue is the scope of the remedy for the Miranda violation, and on this point our precedents take a different view from that of the United States Supreme Court. See State v. Oakes, 157 Vt. 171, 174-75, 598 A.2d 119, 121-22 (1991) (noting that the United States Supreme Court describes the federal exclusionary rule for Fourth Amendment violations as "a judicially created remedy rather than a constitutional right").
¶ 19. A starting point for examination of this question is State v. Brunelle, 148 Vt. at 349, 534 A.2d at 200, where we addressed whether we would follow the decisions in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and United States v. Havens, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). These decisions allowed the prosecution to impeach a criminal defendant who testifies with statements taken in violation of Miranda. We rejected these decisions under the Vermont Constitution because they are *591 inconsistent with the right under Article 10 of a defendant "to be heard by himself and his counsel." Brunelle, 148 Vt. at 352-53, 534 A.2d at 202. We held instead that the prosecution can impeach with the suppressed evidence only where "a defendant has testified on direct examination to facts contradicted by previously suppressed evidence bearing directly on the crime charged." Id. at 354, 534 A.2d at 203. Although Brunelle is based primarily on a defendant's right to testify, the decision explained its relationship to the right against self-incrimination and Miranda. As discussed above, it held that a violation of Miranda was also a violation of the Article 10 right against self-incrimination. Id. at 355 n. 11, 534 A.2d at 204 n. 11. Accordingly, the Court described Brunelle as "a limited exception to State v. Badger, 141 Vt. 430, 452-53, 450 A.2d 336, 349 (1982), which held that `[e]vidence obtained in violation of the Vermont Constitution, or as a result of a violation, cannot be admitted at trial as a matter of state law.'" Id. Brunelle necessarily holds that the broad exclusionary rule of Badger applies to Miranda violations.
¶ 20. Badger is itself an important precedent because it applied a locally-created exclusionary rule to Miranda violations to suppress physical evidence, there the defendant's clothing. 141 Vt. at 452-53, 450 A.2d at 349. Badger found a violation of Article 10 based in part on a failure to give Miranda warnings and an invalid waiver under Miranda, although it did not explicitly hold that a violation of Miranda was a violation of Article 10. It went on to develop the broad exclusionary rule for such a violation, because:
Introduction of such evidence at trial eviscerates our most sacred rights, impinges on individual privacy, perverts our judicial process, distorts any notion of fairness, and encourages official misconduct.
Id. at 453, 450 A.2d at 349. With respect to the clothing at issue, it held that "the seizure of the clothing is too directly connected to the illegal confession to allow" its admission. Id. at 453, 450 A.2d at 350.
¶ 21. Defendant argues with considerable force that Badger is directly on point and rejects the Patane holding that the exclusionary rule does not extend to physical evidence acquired as a result of a Miranda violation. The holding in Badger is reinforced by Brunelle, and Brunelle is independently important because it rejects Harris and Havens  both significant building blocks of the limited exclusionary rule set forth in Patane  and demonstrates that our adherence to Miranda under Article 10 does not include adherence to the federal exclusionary rule for Miranda violations. Brunelle, 148 Vt. at 350, 534 A.2d at 201.
¶ 22. We have revisited the need for an exclusionary rule, and the definition of the applicable rule, numerous times since Badger and Brunelle. For example, in Oakes, 157 Vt. at 183, 598 A.2d at 126, we rejected the good faith exception to the exclusionary rule for searches made in good faith under a warrant later found invalid as announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Although the decision applied specifically to violations of the Fourth Amendment and Article 11 of Chapter I of the Vermont Constitution, we think its rationale applies equally to Article 10. Oakes draws fundamentally on Badger, which is based primarily on Article 10. We stressed in Oakes our independence from the federal doctrine dealing with the exclusionary rule:
By treating the federal exclusionary rule as a judicially created remedy rather than a constitutional right, the Supreme Court's decision focuses, not on interpretation *592 of the federal constitution, but on an attempted empirical assessment of the costs and benefits of creating a good faith exception to the federal exclusionary rule. This empirical assessment can inform this Court's decision on the good faith exception only to the extent that it is persuasive. If the assessment is flawed, this Court cannot simply accept the conclusion the Supreme Court draws from it. To do so would be contrary to our obligation to ensure that our state exclusionary rule effectuates Article 11 rights, and would disserve those rights.
Oakes, 157 Vt. at 174-75, 598 A.2d at 122. We went on to find Leon's cost/benefit analysis unpersuasive. Id. at 183, 598 A.2d at 126.
¶ 23. Another thread in our exclusionary-rule jurisprudence is relevant here. In State v. Bean, 163 Vt. 457, 658 A.2d 940 (1995), the defendant attempted to plead guilty at his initial appearance before counsel was assigned and in the process made incriminating statements. We held that the court's action in going beyond the limited events that are part of the initial appearance violated Vermont Rule of Criminal Procedure 5(e), which states that "[n]o further proceedings shall be had until counsel has been assigned." Id. at 464, 658 A.2d at 945. The State argued, however, that despite the violation it would be improper to suppress the incriminating statements because the purpose of an exclusionary rule is to deter police misconduct and the defendant made the statements spontaneously and voluntarily. We responded that there are additional reasons for applying an exclusionary rule, and those reasons applied:
[T]he State asks that we not fashion a remedy to redress the violation of the rule, even though the consequences of the violation are exactly what the rule was intended to prevent. Although defendant's statements were spontaneous and voluntary, as the State argues, they were made without the advice of counsel. In our view, the only way we can assure that defendant has the effective assistance of counsel and a fair trial is to prevent adverse consequences from being imposed on him when proceedings go forward improperly without counsel.. . .
We are not persuaded by the State's argument that we are improperly using an exclusionary rule. Although in a broad sense we are suppressing evidence, it is evidence that came into existence because of a lack of compliance with the rule. The need here is not to deter; instead, it is to give defendant the benefit of counsel and to enforce procedures created to protect the right to counsel.
Id. at 465-66, 658 A.2d at 946; see also State v. Gilman, 173 Vt. 110, 116-17, 787 A.2d 1238, 1243-44 (2001) (holding that State's failure to comply with statutory right to counsel law in DUI cases required suppression of refusal to take breath test).
¶ 24. We would have to make a fundamental departure from our exclusionary rule jurisprudence in order not to apply an exclusionary rule here. In fact, we would have to overrule Badger or substantially narrow it. The approach of Patane, on the other hand, would create an incentive to violate Miranda. We see no justification for a such a retrenchment in these circumstances. In addition, because the Miranda rule is intended to protect the right to counsel, as well as the right against self-incrimination, we would have to ignore the holding in Bean and like cases which use an exclusionary rule to protect the right to counsel.
¶ 25. We note that the three state supreme courts that have analyzed Patane under their state constitutions have concluded *593 that they cannot adopt it because it undercuts the enforcement of Miranda. In Commonwealth v. Martin, 444 Mass. 213, 827 N.E.2d 198 (2005), the Massachusetts Supreme Judicial Court refused to follow Patane in enforcing Miranda rights through Article 12 of the Declaration of Rights of the Massachusetts Constitution. The court agreed with the observation of Justice Souter, dissenting in Patane, that the decision added "`an important inducement for interrogators to ignore the [Miranda] rule'" and created "`an unjustifiable invitation to law enforcement officers to flout Miranda when there may be physical evidence to be gained.'" Id. at 203 (quoting Patane, 542 U.S. at 647, 124 S.Ct. 2620 (Souter, J., dissenting)). It concluded: "To apply the Patane analysis to the broader rights embodied in art. 12 would have a corrosive effect on them, undermine the respect we have accorded them, and demean their importance to a system of justice chosen by the citizens of Massachusetts in 1780." Id. Thus, it followed earlier decisions in which it had rejected United States Supreme Court rulings weakening the applicability of Miranda. Id. at 206.
¶ 26. In State v. Knapp, 285 Wis.2d 86, 700 N.W.2d 899 (2005), the Wisconsin Supreme Court reached the same conclusion under Article I, Section 8 of the Wisconsin Constitution in a case where the evidence showed that the police had intentionally violated Miranda. It relied on the loss of deterrence, id. at 917-18, the discouragement of police misconduct, id. at 918-19, and the need to preserve judicial integrity, id. at 920, in deciding to reject Patane.
¶ 27. The decisions in Martin and Knapp were followed under Section 10, Article I of the Ohio Constitution by the Ohio Supreme Court in State v. Farris, 109 Ohio St.3d 519, 849 N.E.2d 985 (2006). Again, the main rationale is the reduction in deterrence of Miranda violations:
We believe that to hold otherwise would encourage law-enforcement officers to withhold Miranda warnings and would thus weaken Section 10, Article I of the Ohio Constitution. In cases like this one, where possession is the basis for the crime and physical evidence is the keystone of the case, warning suspects of their rights can hinder the gathering of evidence. When physical evidence is central to a conviction and testimonial evidence is not, there can arise a virtual incentive to flout Miranda. We believe that the overall administration of justice in Ohio requires a law-enforcement environment in which evidence is gathered in conjunction with Miranda, not in defiance of it.
Id. at 996. We agree with the analysis and result reached in each of these cases.
¶ 28. For the above reasons, we conclude that we will not follow United States v. Patane under Article 10 of the Vermont Constitution and our exclusionary rule. Physical evidence gained from statements obtained under circumstances that violate Miranda is inadmissible in criminal proceedings as fruit of the poisonous tree. Since it is undisputed that the marijuana plants were such fruit in this case, the district court erred in failing to suppress them.
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.