2011 VT 2

## State of Vermont v. David Barron

[16 A.3d 620]

No. 09-225

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 28, 2011

*Diane C. Wheeler* and *John T. Lavoie*, Franklin County Deputy State's Attorneys, St. Albans, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Following a jury trial in Franklin District Court, defendant was convicted of sexual assault on a minor. Subsequently, the court also adjudged him guilty of being a habitual offender. Defendant makes the following three arguments on appeal from these convictions: (1) he was subjected to interrogation while in custody without a *Miranda* waiver and this violation tainted his subsequent confession; (2) his right to counsel was violated; and (3) the habitual offender statute does not include a decriminalized conviction. We affirm the convictions and conclude that: (1) the law enforcement officer's initial interview of defendant on July 11 violated the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966), but the confession obtained at his second interview did not need to be suppressed as "fruit of the poisonous tree"; (2) the officer's second interview with defendant on August 2 did not violate the requirements of *Miranda*; (3) defendant's Sixth Amendment right to counsel was violated by the July 11 interview but not by the August 2 interview; and (4) defendant was properly found guilty of being a habitual offender.

¶ 2. We first present the facts related to defendant's motion to suppress and right to counsel claims, which are not in dispute. On July 5, 2007, defendant and his wife were involved in an altercation, and two Franklin County deputy sheriffs were dispatched in response. As a result of this domestic disturbance, defendant was found to be in violation of probation[1] and was charged with disorderly conduct. Defendant was consequently placed in custody. On July 8, the court assigned a public defender to represent him.

¶ 3. While being transported from his home to the sheriff's office on the day of the incident, defendant voluntarily stated that his wife wanted him arrested so that she could have a sexual

---

[1] Defendant was on probation under a sentence imposed by the Chittenden District Court. The violation of probation was filed in that county and is not before the Court.

affair with A.M., a fifteen-year-old female who resided with them. Once at the sheriff's office, defendant wrote an affidavit describing the events surrounding the altercation for which he had been arrested. Defendant noted in the affidavit that his wife was having a sexual relationship with A.M., and he further claimed that his wife and A.M. had threatened to have him "locked up" if he ever said anything about their relations.

¶ 4. A detective was assigned to investigate defendant's allegations about his wife. On July 11, 2007, the detective interviewed defendant about this complaint at the Chittenden Correctional Center, where defendant was incarcerated based on his violation of probation. The detective spoke with defendant in the superintendent's office, and defendant appeared happy to discuss his allegations. The interview lasted for about forty-five minutes, of which the last ten minutes were recorded. No *Miranda* warnings were read or waived at the July 11 interview, and defendant did not waive his right to counsel. Defendant's court-appointed counsel was not informed of the interview.

¶ 5. Following his interview with defendant, the detective met separately with both A.M. and defendant's wife on July 16, 2007. A.M. confirmed that she had had sexual relations with defendant's wife, but in her initial interview, she denied having relations with defendant. Defendant's wife was charged with sexual assault, and A.M. was taken into the custody of the Department for Children and Families (DCF). The detective re-interviewed A.M. on August 1, 2007, and during this interview, A.M. stated that she had had sexual contact with defendant as well as with his wife.

¶ 6. Also on August 1, defendant called and left a message for the detective stating that he had more information concerning his wife. By this time, defendant had been released from prison and was residing with his mother. The detective arranged a meeting with defendant on August 2, 2007, near defendant's mother's house, and defendant was waiting for the detective when he arrived. The detective wore civilian clothes and was driving an unmarked police cruiser. Defendant voluntarily entered the detective's vehicle, and the detective used a hidden recorder to document the interview.

¶ 7. The August 2 interview began with a discussion of the problems defendant was having with his wife. The detective then steered the conversation to a discussion of defendant's complaint against his wife and introduced A.M.'s claim that she had had

sexual relations with defendant. In the course of this discussion, defendant made admissions that he had participated in "threesomes" with his wife and A.M. and had once had sexual intercourse with A.M.

¶ 8. On August 6, 2007, defendant received a citation to appear in court in connection with his alleged sexual activity with A.M. The following day, the State filed an information charging defendant with two counts of sexual assault on a minor under 13 V.S.A. § 3252(c).

¶ 9. Before the trial on the sexual assault charges, defendant submitted two motions to exclude evidence related to his interviews with the detective. Defendant first argued that his admissions to the detective on August 2 were inadmissible because they did not result from a valid waiver of *Miranda* rights. In his second motion, defendant claimed that all of the post-arrest questioning to which he was subjected violated his right to counsel. He further argued that the July 11 interview violated *Miranda* because he was not informed of his rights, and he claimed that the subsequent accusations by A.M. and his wife were "fruits" of the July 11 interrogation.

¶ 10. After hearings on April 15, 2008, and May 6, 2008, the trial court denied both defendant's motions to exclude evidence. The court felt that defendant's right to counsel had not been violated because it found that he had not been interviewed as a suspect in a matter for which counsel had been appointed, but rather, as a complainant in an unrelated matter. Furthermore, the court determined defendant's *Miranda* rights had not been violated by the July 11 interview because defendant was not questioned as a suspect, but "as a complainant in a wholly separate matter," and was, therefore, not in custody for *Miranda* purposes. The court similarly found no violation of *Miranda* during the August 2 interview because defendant was not in custody when he voluntarily entered the detective's vehicle.

¶ 11. A motion to suppress evidence presents a mixed question of fact and law. *State v. Bauder*, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38. In general, we apply a deferential standard of review to the trial court's findings of fact. If the findings of fact are not clearly erroneous, we review the trial court's legal conclusions de novo. *State v. Bryant*, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

¶ 12. On appeal, defendant first argues that the trial court erred in denying his motion to exclude the statements he made to law

enforcement officers without a *Miranda* waiver. Defendant claims that he was wrongly subjected to interrogation while in custody without *Miranda* warnings or a waiver of those warnings, a violation that tainted the subsequent confession which formed the basis of his sexual assault conviction. We will address the July 11 and August 2 interviews separately in assessing the merits of defendant's *Miranda* argument.

¶ 13. In *Miranda*, the United States Supreme Court held that, before being subjected to custodial interrogation, criminal suspects must be advised of their rights to remain silent and to have an attorney present for questioning. 384 U.S. at 444. The Court explained that, "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*; see also *State v. Delaoz*, 2010 VT 65, ¶ 13, 189 Vt. 385, 22 A.3d 388; *State v. Sole*, 2009 VT 24, ¶ 16, 185 Vt. 504, 974 A.2d 587; *State v. FitzGerald*, 165 Vt. 343, 345, 683 A.2d 10, 13 (1996).

¶ 14. First, we consider whether a *Miranda* warning was required at the July 11 interview with defendant. The trial court found that on July 11 defendant was not being questioned as a suspect "but as a complainant in a wholly separate matter" and was therefore not "in custody" for *Miranda* purposes. Defendant argues that this finding was unsupported because the record shows the detective asked defendant about events related to his defense to the disorderly conduct charge and violation of probation for which he was in custody.

¶ 15. Although the court held that defendant was not in custody, its rationale fits better with a holding that there was no interrogation because defendant was giving a statement as a complainant "in a wholly separate matter." Thus, the court appears to have relied on the holding of *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), which states that words not "reasonably likely to elicit an incriminating response from the suspect" do not trigger the need for *Miranda* warnings. We need not decide whether this theory applies to "express questioning," as apparently occurred here, because the premise that the questioning was about a "wholly separate matter" is inaccurate. See *id.* (interrogation refers to express questioning or "its functional equivalent"); *State v. Beer*, 2004 VT 99, ¶ 30, 177 Vt. 245, 864 A.2d 643,

*overruled on other grounds by State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108 (finding that *Miranda* applies to express questioning even if the person being questioned is not a suspect).

¶ 16. It is clear that defendant introduced the subject of his wife's sexual activity with A.M. as a defense to the violation of probation and the disorderly conduct charge made against him. He claimed that the "threatening behavior" for which he was charged, see 13 V.S.A. § 1026(1), was invented by his wife and A.M. so that they could get him out of the house in order to carry out their sexual activity without obstruction. We recognize that the detective interviewed defendant because he alleged that his wife had committed a crime. The interview, however, necessarily included specific questions and answers about defendant's conduct during the evening of July 5, the conduct for which defendant had been charged. We find it impossible to separate the questions about defendant's conduct from those about his wife's conduct. Thus, we hold that defendant was subject to custodial interrogation without warnings, in violation of *Miranda*.

¶ 17. We turn next to the August 2 interview. We conclude that no *Miranda* violation occurred as a result of this interrogation. As discussed above, *Miranda* warnings are required only after a person is taken into "custody" or his freedom has otherwise been significantly limited. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985); *Miranda*, 384 U.S. at 478. The trial court found that defendant was not in custody when he voluntarily entered the detective's vehicle on August 2. Defendant sought the interview and agreed to the location. The officer began the interview in earnest by stating that defendant was not under arrest, was "free to leave at any time," and did not have to talk to the officer. See *State v. Oney*, 2009 VT 116, ¶ 16, 187 Vt. 56, 989 A.2d 995. We agree with the trial court's conclusion and hold that *Miranda* warnings were not required before the August 2 interview.

¶ 18. Having found a *Miranda* violation in the July interview, we must address the remedy. Defendant argues that the proper remedy is to suppress all statements he made at or after the July interview, including the admissions to his sexual activity with A.M. Defendant claims that his statements in the July 11 interview led in an "unbroken line" to his confession and his conviction for sexual assault. He argues that the admissions were the "fruit of the poisonous tree." The trial court did not reach this argument

because it did not find an initial *Miranda* violation. Defendant urges us to suppress the admissions or remand the case to the trial court for a "fruit of the poisonous tree" analysis. We conclude that defendant's subsequent confession was not "fruit" of the July 11 *Miranda* violation and that a remand on this point is unnecessary.

■ ■ ¶ 19. The "fruit of the poisonous tree" doctrine is derived from *Wong Sun v. United States*, 371 U.S. 471 (1963), in which the United States Supreme Court held that evidence must be excluded if discovered as a result of a search conducted in violation of the Fourth Amendment. The Court has declined to apply the "fruit of the poisonous tree" analysis to *Miranda* violations. *Elstad*, 470 U.S. at 307-09. This Court, on the other hand, has departed from the federal precedent and has applied the "fruit of the poisonous tree" analysis to *Miranda* violations under the Vermont Constitution, resulting in the exclusion of both physical evidence and confessions obtained through initial violations of *Miranda*. See *State v. Peterson*, 2007 VT 24, 181 Vt. 436, 923 A.2d 585 (concluding that under Vermont Constitution, Chapter I, Article 10, and Vermont exclusionary rule, physical evidence obtained in violation of *Miranda* must be suppressed); *State v. Badger*, 141 Vt. 430, 450 A.2d 336 (1982) (requiring suppression of both clothing and second confession as direct products of violations of defendant's constitutional rights). In *Peterson*, we explained that:

> Article 10 of the Vermont Constitution prohibits compelling a person "to give evidence against oneself." . . . [T]he Article 10 privilege against self-incrimination and that contained in the Fifth Amendment are synonymous. Consistent with this view, we have held that evidence gathered in violation of the prophylactic rules established in *Miranda* is also a violation of Article 10.

2007 VT 24, ¶ 17 (quotation omitted); see also *State v. Brunelle*, 148 Vt. 347, 355 n.11, 534 A.2d 198, 204 n.11 (1987). We explained, however, that the question of remedy was not controlled by federal law and that the exclusionary rule developed in numerous decisions of this Court applied instead. *Peterson*, 2007 VT 24, ¶ 24. We specifically endorsed the use of "fruit of the poisonous tree" analysis for *Miranda* violations. *Id.* ¶ 28.

¶ 20. The *Wong Sun* doctrine has an exception for evidence that "has been discovered by means wholly independent of any constitutional violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). This independent source doctrine was described in *Wong Sun*:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

371 U.S. at 487-88 (quotation omitted).

¶ 21. Conducting a "fruit of the poisonous tree analysis," defendant argues that the August 2 interview and confession "flowed precisely" from statements that he made in the July 11 interview and should have been suppressed. We disagree. The above passage from *Wong Sun* indicates the "but for" analysis that defendant would have us conduct is not conclusive. *Wong Sun* requires a more careful analysis to ensure that we are not excluding more evidence than is necessary to enforce the deterrent purpose of the exclusionary rule. See 3 W. LaFave, et al., Criminal Procedure § 9.3(b), at 420-21 (3d ed. 2007); *State v. Phillips*, 140 Vt. 210, 218, 436 A.2d 746, 751 (1981) (observing that *Wong Sun* rejects a "but for" causation rule).

¶ 22. In reaching our conclusion, we first note the numerous steps in defendant's "but for" analysis. It starts with the view that if defendant had exercised his *Miranda* rights and refused to speak, the detective would not have interviewed defendant's wife and A.M. with respect to their sexual conduct. Then, we must find that if A.M. had not been interviewed the first time, the second interview in which she accused defendant would not have taken place. Finally, we must hold that if A.M. had not accused defendant, he would not have confessed when the detective met him on August 2. We have strong doubts that the many steps could ever show that defendant's August 2 confession would not have occurred but for the July 11 interview. In any event, the analysis fails the requirements of *Wong Sun* fruit of the poisonous tree in two respects.

■■ ■ ¶ 23. First, *Wong Sun* does not require exclusion if the evidence is from a source "sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 488 (quotation omitted). We have applied this independent source rule on a number of occasions. See, e.g., *Delaoz*, 2010 VT 65, ¶ 15; *State v. Pitts*, 2009 VT 51, ¶ 21, 186 Vt. 71, 978 A.2d 14; *Phillips*, 140 Vt. at 218, 436 A.2d at 750-51; *State v. Dupaw*, 134 Vt. 451, 453-54, 365 A.2d 967, 968 (1976). In this case, defendant himself was the independent source. On July 5, he insisted on giving a written statement to the deputy sheriffs who arrested him. In that statement, defendant alleged that his wife and A.M. were having sex and that they accused him of disorderly conduct to get him out of the house so he would not report their conduct. He specifically stated: "[A.M.] is 15 yrs old; Theresa is 21 yrs old, and them having sex is a crime." Because of that report, the deputies were required to report the information to the Commissioner of DCF. See 33 V.S.A. § 4913(a) (requiring police officer who has reasonable cause to believe that any child[2] has been abused to report to Commissioner within twenty-four hours). The Department has a number of options in responding to the report, including an investigation, which can be done in collaboration with law enforcement. *Id.* § 4915(e), (f). The investigation includes a visit to the child's place of residence and "[a]n interview with or observation of the child reportedly having been abused or neglected." *Id.* § 4915b(a)(1), (2). In this case, the detective was conducting an investigation based on defendant's own accusation when he interviewed defendant. Even if defendant had remained silent and not participated in the interview, the detective would have been required to go on to interview A.M. and obviously would have interviewed defendant's wife, whom defendant had accused of the crime. Under these circumstances, the eventual statement of A.M. — that defendant engaged in sexual activity with her — was not tainted by the unwarned interview of July 11, and defendant's confession is not the fruit of that interview. See, e.g., *State v. O'Bremski*, 423 P.2d 530, 533 (Wash. 1967) (holding admissible testimony of a fourteen-year-old girl found as result of illegal search of defendant's apartment; "[k]nowledge of the existence of the girl and of her presence in the apartment was not the 'product' of the search.

---

[2] "Child" is defined as "an individual under the age of majority." 33 V.S.A. § 4912(1).

Her parents had reported her missing and had sought the aid of the police.").

¶ 24. Second, *Wong Sun* does not require exclusion if the causal connection has "become so attenuated as to dissipate the taint." 371 U.S. at 487 (quotation omitted). We applied this exception in *State v. Smith*, 140 Vt. 247, 437 A.2d 1093 (1981). In that case, the defendant was arrested for rape and murder and given *Miranda* warnings, and he invoked his right to counsel. Thereafter, he was asked about his age and answered. Before counsel became available, the defendant asked for law books and discussed the possible penalty for murder. During this discussion, which came several hours after the *Miranda* warnings and the question about his age, he said, "you'd think I'd killed the President of the United States." *Id.* at 254, 437 A.2d at 1096. The defendant sought to suppress both the answer to the question about his age and the statement about killing the President. The trial court suppressed the age answer, but not the statement. We affirmed the denial of the motion to suppress the statement because several hours elapsed between the age answer and the discussion in which the defendant made the remark about killing the President: "Any connection between the two conversations was so attenuated that the . . . statement cannot be considered the fruit of an illegal interrogation." *Id.* at 256, 437 A.2d at 1097.

¶ 25. For a number of reasons, we conclude that the holding in *Smith* applies to this case. Here, the time interval between the tainted statement and the confession is twenty days, with many events occurring in between. Further, defendant's July 11 interview could not have led police to incriminating evidence or to defendant's ultimate confession without the independent will and subsequent assertions of A.M. and defendant's wife, witnesses who were known to the police for reasons other than the tainted interview. See *United States v. Ceccolini*, 435 U.S. 268, 280 (1978) ("[T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness."). Also, the detective was not looking for evidence of defendant's sexual misconduct, but instead was investigating the conduct of his wife, and thus did not exploit any information he received in the tainted interview. In fact, the tainted interview produced no incriminating statements. Under these circumstances,

the connection between defendant's first interview and the statement twenty days later in the second interview is too attenuated to find the admissions in the second interview to be the fruit of the poisonous tree.

¶ 26. Defendant relies heavily on *State v. Badger* in arguing that there was a close enough connection here. 141 Vt. 430, 450 A.2d 336 (1982). In *Badger*, this Court considered whether the trial court erred in suppressing a murder confession given after a proper *Miranda* warning because it was the fruit of a prior involuntary, illegally-obtained confession given fifteen hours earlier. We determined there were two relevant inquiries in deciding whether the second confession should be suppressed as a product of the first: whether there was causation — that is, whether "the taint of the initial illegality infects the later confession" — and "whether intervening events break the causal chain and dissipate the effect of the taint." *Badger*, 141 Vt. at 439-40, 450 A.2d at 342.

¶ 27. In addressing these factors in *Badger*, this Court determined that the second confession was "unquestionably a product of the initial confession," because the interrogation that resulted in the second confession "focused completely upon correcting inaccuracies in the first confession." *Id.* at 440, 450 A.2d at 342. We also found that "the close relationship in time and circumstances between the two confessions minimized the salutary effects of the *Miranda* warnings," and that "[t]he warnings . . . were insufficient to cure such blatant abuse." *Id.* at 441, 450 A.2d at 342-43.

¶ 28. We conclude that the facts of *Badger* are so different that the decision is unhelpful to defendant in this case. None of the factors we rely upon above to hold that the connection between defendant's first interview and his second was too attenuated for defendant to prevail were present in *Badger*. As we noted in *Badger*, the first confession there was induced by a "blatant abuse" of *Miranda*. *Id.* at 441, 450 A.2d at 343. That description does not apply in this case.

¶ 29. Defendant's next argument is that the trial court erred in concluding that defendant's Sixth Amendment[3] right to counsel was not violated. Defendant argues that the July 11 interview

---

[3] Before the trial court, defendant cited the right to counsel in Chapter I, Article 10 of the Vermont Constitution but specifically relied only on federal cases. In this Court, defendant argued that the interviews violated "his right to counsel under the Sixth Amendment, Article 10 of the Vermont Constitution and the public defender act, 13 V.S.A. § 5237." The cite to § 5237 was apparently to point out that

should not have occurred without notification of defendant's court appointed attorney. The trial court rejected that argument because (1) defendant was being interviewed as a complainant rather than as a suspect and (2) even if defendant was a suspect when interviewed, it is possible for police to interview a suspect outside of the presence of counsel about a matter unrelated to the charge for which counsel has been appointed.

¶ 30. A right to counsel exists under the Sixth Amendment, commencing when the State formally initiates adversarial proceedings against a defendant. *Brewer v. Williams*, 430 U.S. 387, 401 (1977); see *State v. Stanislaw*, 153 Vt. 517, 531, 573 A.2d 286, 294 (1990) (noting that Sixth Amendment does not attach "until adversary judicial proceedings have begun"). Once the right attaches, the State is required generally to deal with a defendant through counsel. See *Maine v. Moulton*, 474 U.S. 159, 176 (1985). The right is offense specific — that is, it attaches only to offenses for which prosecution has commenced. *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001); accord *State v. Lang*, 167 Vt. 572, 573, 702 A.2d 135, 137 (1997) (mem.). Here, defendant was questioned on July 11 after he had been charged with disorderly conduct and a violation of probation and after counsel had been appointed. He was not afforded counsel during the questioning and did not waive counsel. As we held above, the questioning related to the offenses for which counsel had been appointed. Thus, we find that the detective violated defendant's Sixth Amendment rights in the July 11 questioning.

¶ 31. As we discussed above, however, defendant must establish that the August 2 confession was the fruit of the poisonous tree of the July 11 Sixth Amendment violation. See *Nix*, 467 U.S. at 442 ("The [United States Supreme] Court has applied the [fruit of the poisonous tree] doctrine where the violations were of the Sixth Amendment as well as of the Fifth Amendment." (citation omitted)). For the same reasons that the August 2 confession was not a fruit of the *Miranda* violation, it cannot be

---

defendant never made a waiver of counsel that complied with the statute. Although there was a reference to the Vermont Constitution, there was no assertion that Article 10 would produce a different result from the Sixth Amendment, and defendant relied exclusively on Sixth Amendment cases. Under these circumstances, we do not analyze the unsupported claim under Article 10. See *State v. Forty*, 2009 VT 118, ¶ 23, n.2, 187 Vt. 79, 989 A.2d 509.

found to be a fruit of the Sixth Amendment violation. Therefore, the July interview does not provide grounds to suppress the confession.

¶ 32. We now turn to defendant's Sixth Amendment right to counsel at the August 2 interview. Defendant argues that his right to counsel was violated on August 2 because the detective deliberately elicited incriminating information from him without making counsel available. See *Brewer*, 430 U.S. at 405. While this is true, the Sixth Amendment right is "offense specific" and cannot be invoked for an offense unless formal adversarial proceedings concerning that offense have already begun. See *Cobb*, 532 U.S. at 167-68; *Lang*, 167 Vt. at 574, 702 A.2d at 137. When defendant was interviewed, he had not yet been charged with sexually assaulting A.M.

¶ 33. The critical precedent is *Texas v. Cobb*. In *Cobb*, the United States Supreme Court considered a situation in which the defendant had been indicted for burglary and was later interviewed without counsel about the disappearance of a mother and child that occurred at the same time as the burglary. During the interview, the defendant confessed to murdering both individuals during the burglary and then later claimed his confession should have been suppressed because it was obtained in violation of his Sixth Amendment right to counsel. He argued that the right to counsel "extends to crimes that are 'factually related' to those that have actually been charged." *Cobb*, 532 U.S. at 166. The Court specifically rejected that the Sixth Amendment right extends to uncharged, related offenses, except in the very narrow instance that the charged and uncharged crimes "would be considered the same offense." *Id.* at 173; see also *Henderson v. Quarterman*, 460 F.3d 654, 662-64 (5th Cir. 2006) (holding that, where defendant was charged with kidnapping child, interrogation without counsel about whether child was murdered did not violate defendant's Sixth Amendment rights); *United States v. Johnson*, 352 F.3d 339, 344 (8th Cir. 2003) (finding no Sixth Amendment violation where defendant charged with aiding and abetting in killing of five persons was questioned without counsel about aiding and abetting in killing of same five persons but under a claim that victims were murdered for purpose of furthering offenses under drug laws).

¶ 34. Deciding this case solely under federal law, *Cobb* represents a complete answer to defendant's argument because

the evidence he wants to suppress — his confession to sexual assault — relates to a crime for which he had not yet been charged and for which he had no Sixth Amendment right. Thus, even if defendant was questioned in the August interview about his alleged disorderly conduct and his allegation that his wife and A.M. complained against him so they could engage in sexual activity unhindered by him, that violation of the Sixth Amendment provides him no help in his claim that his confession to a different crime must be suppressed. This is necessarily the holding under *Cobb* because the crimes in that case arose from the same facts, and a confession to one crime necessarily involved a confession to the other. The reasoning is explained exactly in *Thompson v State*:

> Thus, if the right to counsel has attached as to a charged offense, and the police interrogate the defendant in the absence of his counsel about matters that the police knew or should have known might elicit incriminating evidence pertaining to the pending charges, the Sixth Amendment right to counsel has been violated and such evidence is "inadmissible at the trial of those charges." But if, during that same interrogation, the police elicit incriminating evidence pertaining to criminal conduct that is not yet the subject of a formal charge, the Sixth Amendment right to counsel has not yet attached as to that offense, and therefore any such evidence is admissible against the defendant at the trial on the then-uncharged offense.

93 S.W.3d 16, 25 (Tex. Crim. App. 2001); see generally B. Holland, *A Relational Sixth Amendment During Interrogation*, 99 J. Crim. L. & Criminology 381, 385 (2009) ("The practical consequence of these holdings is that law enforcement easily can work around an existing attorney-client relationship to question a charged defendant about nearly anything, up to and including the precise factual subject of filed charges.").

¶ 35. There is no question that disorderly conduct and sexual assault are separate offenses. Thus, defendant's Sixth Amendment right did not prevent the detective from questioning him about the alleged sexual assault before charging him with that offense. Whatever may have been the content of the August 2 interview with respect to the preexisting charged offense, the Sixth

Amendment does not require suppression of his sexual assault confession.

¶ 36. Defendant's final argument is that the habitual offender statute he was convicted under should not be interpreted to allow the State to rely on a conviction for an offense that has been subsequently decriminalized. The trial court found defendant guilty of being a habitual offender in violation of 13 V.S.A. § 11 based on the finding that defendant had been convicted of three felonies before the earliest possible date of the offense in the current case. One of the felonies the court included in determining defendant's guilt under the habitual offender statute was a conviction in 1989 for sexual assault in violation of 13 V.S.A. § 3252(3). Defendant claims this conviction resulted when defendant, then under age nineteen, had consensual sex with his then-fifteen-year-old girlfriend. Defendant argues that because, under the current version of 13 V.S.A. § 3252, consensual sex between an eighteen-year-old and a fifteen-year-old is not a crime, it was error for the trial court to rely upon this conviction to sentence him as a habitual offender. Defendant claims the change in 13 V.S.A. § 3252 "essentially removed the crime from the body of felonies" and that, under the rule of lenity and 1 V.S.A. § 214(c), this Court should decide the habitual offender issue in defendant's favor. We disagree with defendant's arguments.

¶ 37. Both defendant and the State rely on Vermont's "saving clause" statute, 1 V.S.A. § 214(c), to make their habitual offender arguments. See *State v. Matthews*, 131 Vt. 521, 522, 310 A.2d 17, 19 (1973) (referring to 1 V.S.A. § 214(c) as the " 'saving clause' statute"). This statute states that "[i]f the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment." 1 V.S.A. § 214(c). We agree that 1 V.S.A. § 214(c) controls, and we conclude that it results in a decision against defendant.

¶ 38. There are two reasons for our conclusion. The first is that § 214(c) operates as defendant suggests only if the sentence is not imposed "prior to the date of the amendment." The sentence at issue here was imposed prior to the date of the amendment. See 2005, No. 192 (Adj. Sess.), § 10 (amending 13 V.S.A. § 3252). The second reason comes from the holding in

*Matthews*, a case in which the defendant was charged under a statute that was repealed before the case came to trial. There, we specifically stated that "[u]nder a saving clause or statute the statutory rights and penalties are determined by the statute in effect at the time of the occurrence of the facts and may be enforced after repeal if the underlying facts are proved." 131 Vt. at 523, 310 A.2d at 19. Section 214(c) applies to a reduction in the statutory punishment. In this case, there was no reduction in punishment but instead a redefinition of the required ages of the defendant and the victim. In essence, the crime was repealed with respect to an eighteen-year-old accused and a fifteen-year-old victim. Thus, this case is much closer to *Matthews* than to the coverage of § 214(c). We conclude for this reason that § 214(c) lenity does not apply. Accordingly, we find no reason to exclude the 1989 conviction in determining whether defendant is a habitual offender in the current case.

*Affirmed.*