APPEL, Justice
(concurring in part and dissenting in part).
I concur in the majority’s resolution of the expert opinion issue and the search and seizure issue. I dissent in the court’s treatment of issues surrounding the custodial interrogation of Tyler.
By a 4-3 margin, a majority of this court has concluded Tyler was not in custody during the ride to the police station and during her interview at the police station. For the reasons expressed by Justice Hecht, three justices, including myself, reach a different conclusion. A slight variation in the facts could well have led to a different result. Whether a person is in custody will turn on the facts of a particular case, but I trust it clear this court will not tolerate a two-step confession process in which law enforcement seeks to evade the requirements of Miranda.[20]
In light of its conclusion Tyler was not in custody, the majority does not reach the question of proper remedy in the event of unlawful successive interviews. While I agree with Justice Hecht’s application of Seibert under federal law, I write separately to emphasize that in my view, when law enforcement improperly engages in a two-step interrogation to defeat Miranda, the Iowa Constitution requires any improperly obtained inculpatory statements be suppressed unless the state meets the “fruit of the poisonous tree” test of Wong Sun v. United States, 371 U.S. 471, 485-86, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 454 (1963).
While the United States Supreme Court in Oregon v. Elstad took a different approach, I find the dissents in that case much more persuasive than the majority opinion. Compare 470 U.S. 298, 307-08, 105 S.Ct. 1285, 1292-93, 84 L.Ed.2d 222, 231 (1985) (majority opinion) (finding “[i]t is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect’s ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period”), with id. at 335, 105 S.Ct. at 1306-07, 84 L.Ed.2d at 249 (Brennan, J., dissenting) (“The correct approach ... is to presume that an admission or confession obtained in violation of Miranda taints a subsequent confession unless the prosecution can show that the taint is so attenuated as to justify admission of the subsequent confession.”), and id. at 364-72, 105 S.Ct. at 1321-26, 84 *186 L.Ed.2d at 268-73 (Stevens, J., dissenting). As noted by Justice Brennan in Elstad, the linkage between the unlawful confession and subsequent post-Miranda confession will ordinarily be clearly established. Id. at 321-24, 105 S.Ct. at 1299-1301, 84 L.Ed.2d at 240-42 (Brennan, J., dissenting). Further, under Miranda, there is a presumption that the product of unwarned custodial interrogation is coerced. See id. If so, Wong Sun provides the proper standard for admission of inculpatory statements made after unwarned statements. To hold otherwise is to remove the strength of Miranda and encourage law enforcement to engage in quasi-custodial interrogations in the hope that a confession may be extracted without allowing the suspect to have the usual Miranda warnings.
Further, history demonstrates the vol-untariness test is extraordinarily difficult to apply and leads to inconsistent results. See Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405, 420 (2000) (noting that the totality of the circumstances test for voluntariness “is more difficult ... for law enforcement officers to conform to, and for courts to apply in a consistent manner”); Louis Michael Seidman, Brown and Miranda, 80 Calif. L. Rev. 673, 729-30 (1992) (describing Justice Frankfurter’s unsuccessful attempt to put' spine into voluntariness). Indeed, that is one of the reasons why the Miranda rule was adopted in the first place. While not perfect, I view Miranda as an important protection to help ensure interrogations are truly voluntary.
My views are consistent with decisions from a number of other state jurisdictions. For example, in Commonwealth v. Smith, the Supreme Judicial Court of Massachusetts rejected the Elstad approach. 412 Mass. 823, 593 N.E.2d 1288, 1295-96 (1992). According to the Smith court, a statement obtained in violation of Miranda is presumed to be tainted. Id. at 1295. As stated in Smith:
The presumption of taint was intended to deter law enforcement officials from circumventing the Miranda requirements by using the warnings strategically — first questioning the suspect without benefit of warnings, and then, having obtained an incriminating response or having otherwise benefitted from the coercive atmosphere, by giving the Miranda warnings and questioning the suspect again in order to obtain an admissible statement.
Id. at 1292. Further, the Smith court found, “This presumption [of taint] supports one of the purposes of the ‘bright-line’ Miranda rule: to avoid fact-bound inquiries into the voluntariness of confessions.” Id. at 1295-96. As a result, the Smith court held the prosecution has the burden of showing a break in the stream of events in order to gain admission of the subsequent incriminating statements. Id. at 1292,1295.
Appellate courts in Hawaii, New York, Tennessee, and Vermont have reached a similar conclusion based on similar reasons. See State v. Pebria, 85 Hawai’i 171, 938 P.2d 1190, 1196 (Ct.App.1997) (rejecting Elstad under Hawaii Bill of Rights); People v. Bethea, 67 N.Y.2d 364, 502 N.Y.S.2d 713, 493 N.E.2d 937, 938-39 (1986) (per curiam) (rejecting Elstad under state constitution); State v. Smith, 834 S.W.2d 915, 919 (Tenn.1992) (adopting approach of Justice Brennan under state constitution); State v. Barron, 189 Vt. 193, 16 A.3d 620, 626-27 (2011) (endorsing the “fruit of the poisonous tree” analysis under state constitution).
I agree with the approach of these state authorities. On the record, I would find there was no “break in the stream of events” sufficient to allow for the admis *187 sion of subsequent interrogation under Wong Sun. See Elstad, 470 U.S. at 326, 345-46, 105 S.Ct. at 1302, 1312, 84 L.Ed.2d at 243, 255 (Brennan, J., dissenting) (internal quotation marks omitted).
WIGGINS and HECHT, JJ., join this concurrence in part and dissent in part.

. I note Tyler did not claim a different test should be utilized for determining custody under the Iowa Constitution. Cf. State v. Kit-tredge, 97 A.3d 106, 111 (Me.2014) (applying ten-factor test and noting the state bears the burden of proof of showing lack of custody).